636 So.2d 246 (1994)
Tammy CHENNILIARO, et al.
v.
KAUFMAN & BROAD HOME SYSTEMS OF LOUISIANA, INC. et al.
No. 93 CA 1126.
Court of Appeal of Louisiana, First Circuit.
January 19, 1994.
Rehearing Denied March 21, 1994.
*247 Terrence K. Knister, New Orleans, LA, for defendants, appellants.
Elizabeth Ramirez, Covington, LA, for plaintiffs, appellants.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
In this suit to rescind the sale of a mobile home and action for damages for products liability, both plaintiffs and defendants appeal the judgment of the trial court. We amend and affirm the judgment of the trial court.
On appeal, plaintiffs complain that the trial court erred in: 1) granting a judgment notwithstanding the verdict (JNOV) and reducing the general damage award from $30,000 to $2,383.69 (i.e., the sum incurred for medical expenses of the minor); 2) awarding only $10,000 general damages to the minor, Kristy Chenniliaro; 3) failing to award interest, incident to the financing of the mobile home, and 4) of the inadequate amount awarded plaintiffs for attorneys' fees.
Defendants also appeal, and they assign as error: 1) the court's denial of a directed verdict dismissing Kaufman & Broad Home Systems, Inc., as not being proved to be a manufacturer of plaintiffs' mobile home; 2) in holding Kaufman & Broad Home Systems, Inc., liable as a manufacturer; and 3) in awarding the sum of $400 as a credit for plaintiffs' use of the mobile home.
Plaintiffs, Tammy and Robbie Chenniliaro, purchased a new mobile home on March 21, 1986 from Calvin Klein Mobile Homes, Inc. in Covington, Louisiana. The transaction was a credit sale financed by Oak Tree Savings and Loan. The home was allegedly manufactured by Kaufman and Broad Home Systems, Inc., at its Louisiana plant in Ruston, during January, 1986.
The mobile home was delivered to the couple's lot and Robbie Chenniliaro was instrumental in its set-up. The home had *248 been ventilated before delivery to plaintiff's lot. The plaintiffs moved into the home in April, 1986. The home was occupied, up to the time of trial by plaintiffs and their two minor children Chastity (age 6) and Kristy (born shortly after the purchase of the home). Shortly thereafter, within 3 to 5 months, they began to notice mold, mildew and soft spots on the interior walls of the home. The couple attempted to again ventilate the home, as suggested by the maintenance manual, but the problem persisted. Mr. Chenniliaro contacted the seller of the home and was told to speak with the manufacturer under the warranty. He, thereafter, contacted Kaufman and Broad Home Systems, Inc., in Waco, Texas. This company issued 5 work orders, but these attempts to eliminate the problems were unsuccessful. No further attempts at repair were made after August, 1987. In September, 1987, the State Fire Marshal was called for assistance. An inspection of the mobile home took place and the dwelling was found to be uninhabitable. The Office of the State Fire Marshal contacted the defendant's Waco office and demanded correction of the deficiencies. The demands for repairs were not met by Kaufman and Broad Home Systems, Inc.
On March 16, 1988, this action in redhibition and products liability was filed against seller Calvin Klein Mobile Homes, Inc., and Kaufman & Broad Home Systems of Louisiana, Inc. The suit was later amended to include Kaufman & Broad Home Systems, Inc., the seller's liability insurer, and the installer of the air conditioning system, Crawford Distributing Co.[1]
This case was tried for three days before a jury. Following the presentation of the plaintiff's case-in-chief, defendant, Kaufman & Broad Home Systems, Inc., moved for a directed verdict on the basis that plaintiff had failed to present any evidence of its liability. The motion was denied. Following the trial the jury found that the mobile home contained a redhibitory vice which rendered it useless for the purpose intended. The jury granted a rescission of the sale with a credit for use of $400. They also awarded the sum of $1,549, as expenses incident to the sale, and $7,284 as attorney fees occasioned by the redhibition claim. The jury further found that the home contained a defect which made it unreasonably dangerous for normal use (i.e., products liability). This condition was attributed solely to the defendants and plaintiffs were found free of fault.[2] In conjunction with this claim, the jury awarded plaintiffs $30,000 individually and $10,000 on behalf of their minor child, Kristy.
The plaintiffs and defendants each filed motions for judgments not withstanding the verdict (JNOV). The defendants sought a reduction in the $30,000 damage award rendered in favor of plaintiffs individually. The defendants also sought an increase in the $400 credit awarded for use of the mobile home. The plaintiffs sought an increase in the general damage award of $10,000 to plaintiffs on behalf of their minor child, Kristy. They also asked for $8,158.89 the total amount of finances charges occasioned by the purchase of the mobile home.
The trial court heard each motion and thereafter granted, in part the defendant's motion and amended the jury's judgment on the issue of the general damage award made to plaintiffs on behalf of their minor child, Kristy. The court reduced the sum from $30,000 to $2,388.69. The court denied the plaintiffs' motion. These appeals followed.

JNOV

(1) Parent's General Damage Award

Following the three day trial of this matter, the jury awarded the sum of $30,000 to Tammy and Robbie Chenniliaro. This sum was awarded to plaintiffs in response to the following interrogatory:
PRODUCTS LIABILITY
* * * * * *
14. What sum of money would fairly and reasonably compensate plaintiffs for personal injuries to

*249 Kristie Chenniliaro and/or damages sustained by Tammie and Robbie Chenniliaro as a result of such injuries to Kristie? (Emphasis Added)
Tammy and Robbie Chenniliaro
(individually) $30,000.00
 ----------

* * * * * *
Thereafter, defendants sought and were granted a judgment notwithstanding the verdict (JNOV) on this item of damages. The trial judge reduced this award to $2,388.69, which is a sum equal to the amount the couple incurred for their child's medical expenses. Plaintiffs contend that this was error.
In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991) the Louisiana Supreme Court discussed the criteria to be used in determining when a JNOV is proper. In Anderson, id. at 832, the court stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service District No. 1], supra [496 So.2d 270 (La.1986)]. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Additionally, in Anderson, id., the court addressed the difference between a trial court's evaluation of damages upon the grant of JNOV on quantum, as contrasted with an appellate court's treatment of such an issue. The court, in Anderson id. at 834, states:
The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial judge properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco [v. Winston Industries, Inc.], supra [341 So.2d 332 (La.1976)].
Plaintiffs first argue that this general damage award represented compensation for the couple's anguish and distress over living in a defective home. We disagree. The clear language of Interrogatory No. 14 is that the award is to compensate plaintiffs for injuries to their daughter "... or damages sustained ... as a result of such injuries to Kristie."
Plaintiffs next argue that they sustained mental anguish as a result of viewing their minor child, Kristy, suffer from exposure to mold and mildew in their mobile home, which aggravated her condition of atopic dermatitis. They contend that they meet the requirements for recovery of mental anguish damages resulting from injuries to another, as recognized by Lejeune v. *250 Rayne Branch Hospital, 556 So.2d 559 (La. 1990), and its progeny.
In Lejeune, supra at 570, the Louisiana Supreme Court established the criteria which governs recovery for mental anguish arising from injury to a third party:
1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating.... A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock.
4. A fourth restriction concerns the relationship of the claimant and the direct victim. Considering the significant delimiting effect of the first three requirements, a plausible argument can be made for allowing these damages at least to all claimants having a close relationship with the victim. For instance, Professor Ferdinand Stone has stated that: `The test (for recovery) should not be blood or marriage, but rather whether the judge or jury is convinced from all the facts that there existed such a rapport between the victim and the one suffering shock as to make the causal connection between the defendant's conduct and the shock understandable.'
(Citations and Footnotes deleted)
In striking a balance between an atmosphere of no recovery and that of open-ended exposure of tortfeasors, the Court expressed its intent to be circumspect. This overriding preoccupation is apparent from the clear language of the case. The Court in Lejeune at 569 states the following:
A defendant cannot be expected to be liable to virtually everyone who may suffer in any manner from his negligent conduct. The law must place some reasonable limit to liability.... Applying these principles, we find that there is no reasonable support for barring all claims for mental anguish damages. A duty does exist to protect a plaintiff from mental anguish damages occasioned by the negligent infliction of injury to a third person. Yet, there are policy reasons for placing limits on the types of claims that may be redressed.... Just as many other states have done, we find need to move restrictively in this area. It is for this reason that we are not inclined to rely simply on general principles of duty and negligence.
Therefore, we strictly construe the Lejeune principles as they apply to the present case and we find that the plaintiffs do not meet the requirements for recovery of damages for mental anguish due to injuries to their daughter.
Although Mr. and Mrs. Chenniliaro held a close relationship to their daughter, Kristy, and were present for the events that lead to her aggravated skin condition, the injuries to Kristy were not of a "traumatic" nature, such that one would reasonably be expected to suffer "serious" mental anguish; nor were the injuries suffered by these parents of a "severe and debilitating" nature. As such, the criteria set forth in Lejeune, supra, are lacking and Kristy's parents are not legally entitled to damages for mental distress and anguish resulting from her injuries.
Under the circumstances of this case the only element of damage to which Kristy's parents were entitled was the reimbursement of medical expenses incurred as a result of her injuries. The trial judge was correct in granting the JNOV on this item of damages, as reasonable men in the exercise of impartial *251 judgment could not differ as to the result. Anderson, supra. In awarding damages in the amount of medical expenses incurred by the plaintiffs for their minor child, the trial judge did not abuse his discretion. Anderson, supra, citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). This assignment of error lacks merit.

MANIFEST ERROR
In their second assignment of error, plaintiffs argue that the trial court erred in its award of $10,000 general damages to the minor child, Kristy. They contend this amount is inadequate.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the Louisiana Supreme Court, discussed the standard for appellate review of a general damage award:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck [v. Stevens, 373 So.2d 498 (La.1979)] to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
The record reveals the following evidence concerning the damages suffered by the minor, Kristy Chenniliaro:
The youngest daughter of Robbie and Tammy Chenniliaro was brought into the mobile home shortly after her birth and lived there up until the trial of this case. The child had eczema or atopic dermatitis from the time she was 10 days of age. Her father's family has a history of allergies and asthma. The child's condition is characterized by rash, thickening of the skin, open sores, itching, oozing and bleeding. The condition would most often appear on the arms, hands, elbows, knees, legs and face. Kristy's condition is irritated by long haired dogs, acidic foods, certain carpets and moist environments. She also suffered from breathing problems and at age 2½-3 months she was hospitalized with breathing difficulty, fever, swollen and watery eyes. The irritation of the skin and breathing problems caused Kristy to be irritable and to cry.
She received extensive treatment for her condition. Initially, at age 10 days she was seen in the health unit with what was thought to be a heat rash. She was treated and released. She was initially treated by Dr. LoGarbo and Dr. Daigle, pediatricians, for what appeared to be persistent colds. This condition would improve and then return. She was thereafter treated by Dr. Williams who administered a skin cream which minimized, but did not resolve the irritation. Dr. Daigle treated the skin condition with a cream and special soap and recommended the child see Dr. Elizabeth McBurney, a dermatologist.
Dr. McBurney diagnosed the child's condition as being atopic dermatitis. Mrs. Chenniliaro was instructed to give the child baths, apply special creams, administer Benadryl for itching and to dress the child in cotton clothes.
Dr. McBurney testified that 4 per cent of the pediatric population has eczema or atopic dermatitis. Eczema is a skin inflammation which is characterized by red bumps, and scaly skin, blisters and itching. She stated that atopic eczema is in the family with allergies such as asthma, hay fever and sinus. She said that testing for aeroallergens, when the test is positive, can be helpful. Those items which she listed as irritants of the condition are bacterial infections, stress, environmental (i.e., animals), temperature and humidity, mold and mildew (if the spores are inhaled or come into direct contact with the *252 skin). According to Dr. McBurney, the treatment for atopic dermatitis is to provide a comfortable environment with minimum irritants, apply lubricants to the skin, and to use topical steroids for eczema, oral antibiotics for infection and antihistamines for itching. The condition can be very painful, can result in infection and cause irritability which results from itching and lack of sleep.
Dr. McBurney treated Kristy extensively from the time she was 8 months old until the time of trial, mid-1987 until late 1990. It was Dr. McBurney's professional opinion that the mold and mildew inside the trailer aggravated Kristy's dermatitis.
Kristy was seen by Dr. Prem Kumar, the Chief of Allergy and Clinical Immunology at LSU, pursuant to the recommendation of Dr. McBurney.
The child was first seen by Dr. Kumar on May 31, 1989, at which time she exhibited eczema on her wrists and knees. She was also suffering from rhinitis. At the time she was being treated with Benadryl and steroid creams. On June 6, 1989, the child was subjected to skin tests and she was diagnosed as suffering from atopic dermatitis and allergic rhinitis. The skin test revealed a positive reaction to house dust and mites. According to Dr. Kumar, the child is currently being treated with topical skin creams, Atarx, for itching and a nasal spray, three times per day. Additionally, a solvent was recommended to use inside the trailer to treat mold and mites. Dr. Kumar treated the child over a period of approximately a year. He was questioned regarding a prognosis in this case and he stated that 30-40 per cent of children with a mild to moderate case of this condition will completely resolve. The condition generally does not continue into adulthood except in very severe cases. He felt that Kristy's case was mild to moderate. Dr. Kumar further stated that atopic dermatitis, asthma and allergic rhinitis often co-exist. There can be a genetic predisposition to this disorder and it can be aggravated environmentally. That is, this condition is usually aggravated by infection, food, animals and mites. According to Dr. Kumar, there were multiple aggravating factors in the instance of Kristy's skin condition and they were dogs, food, soap, dirt mites and mold. He felt the mold was not the sole cause of the problem. He was of the opinion that it was highly unlikely the mold aggravated the atopic dermatitis. He did say, however, that the dermatologist may have a different opinion.
Under the circumstances of this case we find that an award of $10,000 was reasonable and not manifestly erroneous. We reach this conclusion because of the child's predisposition to the skin condition, coupled with the fact that the mold and mildew were just one potential aggravating factor. Additionally, the expert testimony as to whether the mold and mildew were the cause of the aggravation, was split.
This assignment of error lacks merit.
In plaintiffs' assignments of error nos. 3 and 4 and defendants' assignment of error no. 3, they each complain of specific elements of damages which the jury awarded as being inadequate.

Interest Awarded
In Jury Interrogatory No. 8 the jury was questioned as to what damages, if any, plaintiffs were entitled to receive, incident to the "rescission of the sale ... for preservation of the mobile home and/or repayment of expenses occasioned by the sale." The jury responded by awarding the sum of $1,549.00.
Plaintiffs by assignment of error no. 3, contend this amount which apparently represented only the down payment in the house, was inadequate. They contend that they proved and were entitled to the interest paid by them, pursuant to the financing of the home, which sum was $8,158.89, through December 1990, with a daily interest accrued of $3.90. We agree.
Reasonable expenses occasioned by a sale are a recoverable item of damages in a suit in redhibition. See La.C.C. Arts. 2531 and 2545.
The amount expended to finance the purchase of the home is as much an element of damages occasioned by the sale as is the down payment awarded by the jury. Vance v. Emerson, 420 So.2d 1032 (La.App. 5th Cir.1982). Hence, it was error for the jury *253 not to award this sum when it was proved by plaintiffs as a "reasonable expense occasioned by the sale."
Accordingly, we shall amend the judgment of the trial court to award additional damages incident to the sale in the amount of $8,158.89 plus $3.90 per day, beginning January 1, 1991, until the date this recission is confected.

Credit For Use
The defendants, in assignment of error no. 3, seek an increase in the sum awarded by the jury as a credit for the plaintiffs' use of the mobile home. The jury awarded a total of $400 as this item of damages.
The credit for use of the defective item is a recognized item of damages in a suit for redhibition. See, Breaux v. Winnebago Industries, Inc., 282 So.2d 763 (La.App. 1st Cir.1973). In this case the plaintiffs lived in the home, from April, 1986 until February, 1991. The jury awarded the sum of $400 for a credit for use.
There is no established rule for determining the amount of credit. Breaux v. Winnebago Industries, Inc., supra at 769. In this case we find, from our review of the record, that defendants failed to prove the value of the use of a defective mobile home. Although Calvin Klein, the seller of this home, testified that he rented mobile homes of a comparable size for $300 per month, no testimony was presented concerning the monthly rental value of a mobile home that possessed the defect of which plaintiffs complain. Under these circumstances we deny defendants' attempt to have this element of damages increased.[3] This assignment lacks merit.

Attorney Fees
In assignment of error no. 4, plaintiffs allege that the jury erred in not awarding attorney fees for services rendered at trial. In case of redhibition against a bad faith manufacturer, attorney fees are recoverable. La.C.C. Art. 2545.
In response to jury interrogatory no. 11, the jury awarded attorney fees, as follows:
11. What sum of money, if any, should be awarded to the plaintiffs for attorneys' fees in connection with their claim for redhibition/reduction of price only?
 $7,284.00
In support of this item of damages, plaintiffs' attorney submitted a break-down of time spent on the case, which consisted of 129.5 hours of work, excluding actual trial work. The hours worked were allocated 75% for the redhibition action, 97 hours. The rate of pay was $75 per hour. This resulted in total billable hours, before trial, for the redhibition suit, of $7,284.00. The jury awarded this sum as the item of damages for attorney fees.
It is clear that the jury concluded that the sum of $7,284.00 was the value of the attorneys' fees for the redhibition case as a whole. We cannot say that this is unreasonable and we find no manifest error in this regard. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). For these reasons, this assignment of error lacks merit.

Directed Verdict
In assignments of error nos. 1 and 2 the defendants contend that the trial court erred in refusing to grant a directed verdict in favor of Kaufman & Broad Home Systems, Inc. Defendants reason that this corporation is free from liability in that they were not proven to be the manufacturer of the home nor liable under the express warranty, as the parent corporation for the actions of its subsidiary, Kaufman & Board Home Systems of Louisiana, Inc. We disagree.
At the trial of this matter, following the close of the plaintiffs' case-in-chief the defendant-parent corporation moved for a directed verdict which was denied. The court in denying the directed verdict, concluded as follows:
It seems very, very clear that Kaufman and Broad Home Systems was very deeply involved and was backing up the warranty *254 of its wholly owned subsidiary, Kaufman & Broad Home Systems of Louisiana, Inc. It's very clear that they should be held liable with the wholly owned subsidiary in connection with the action with regard to redhibition in this lawsuit.
In considering a motion for directed verdict in a jury trial the motion is appropriately granted when "after considering all evidentiary inferences in the light most favorable to the movants opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict." Purvis v. American Motors Corp., 538 So.2d 1015, 1019 (La.App. 1st Cir.), writ denied, 541 So.2d 900 (1989).
Our review of the record indicates overwhelming evidence that Kaufman & Broad Home Systems, Inc. held itself out to the public as the manufacturer of this mobile home. The Home Installation Manual illustrates this fact. It states the following:
Kaufman and Broad Home Systems, Inc. has engineered, constructed, and inspected each of its homes to conform with the Federal Construction and Safety Standards (Title VI Program) Act of 1974 as it was on the date of manufacture. (Emphasis Added).
The title of the subject home was issued from Kaufman & Broad Home Systems, Inc., as indicated by the language contained in the sales invoice. Additionally, Kaufman & Broad Home Systems, Inc., assumed responsibilities in warranty:
KAUFMAN AND BROAD HOME SYSTEMS, INC. warrants that your new home is free from any substantial defects in materials or workmanship.
This company also assumed the "final responsibility for fulfillment of all of its warranty obligations." Furthermore, this was the company which responded to complaints from customers concerning warranty problems and issued work orders to address the problems.
In the Louisiana Supreme Court landmark case of Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), arguments similar to those advanced by defendants in this case were presented. In rejecting these arguments, the court found that the limited warranty did not preclude the defendants' responsibility under a warranty of fitness. Media, at 380. The court also found that by selling, servicing and establishing franchise dealerships, this company held itself out as a manufacturer, to the American consumer. For this reason the court found this company responsible as a manufacturer.
For these reasons we find the trial court was correct in casting Kaufman & Broad Home Systems, Inc., for liability with Kaufman & Broad Home Systems of Louisiana, Inc., as the manufacturer of plaintiffs' mobile home. Likewise the trial court did not err in denying this defendants' motion for a directed verdict. This assignment lacks merit.
For the reasons assigned, the judgment of the trial court is amended and as amended is affirmed. Costs are assessed 25 per cent to plaintiff and 75 per cent to the defendant.
AMENDED, AND, AS AMENDED, AFFIRMED.
NOTES
[1] The seller and air condition installer were dismissed prior to trial from any claim for general damages and attorney's fees.
[2] Evidence was presented at trial that the mobile home did not contain a "vapor barrier" in the wall system of the home.
[3] We do not disturb the jury's $400 award, however, because plaintiff has not appealed this issue and hence any objection to this issue, by the plaintiff, is waived. See C.C.P. Art. 2123.