PARRO, J.
 

 | .¿Randall J. Anglin, David G. Anglin, Beth Anglin Mora, Pamela Anglin Rowell, and Andrew Darryl Anglin (the appellants) appeal a judgment recognizing them as owners in indivisión of certain immovable property and awarding them attorney fees and all court costs. They seek recognition of greater ownership interests in the property and additional attorney fees, as well as the release of their interests in the property from a mortgage encumbering the property. William H. Anglin answered the appeal, seeking recognition of his ownership of all of the property at issue, reversal or reduction of the attorney fee award, and reversal or reduction of the award of court costs. For the following reasons, we amend the judgment and affirm it as amended.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 This appeal is the third time this matter has been before this court. See
 
 Anglin v. Anglin,
 
 03-0485 (La.App. 1st Cir.12/31/03), 2003 WL 23182907 (unpublished opinion)
 
 {Anglin
 
 I), and
 
 Anglin v. Anglin,
 
 05-1233
 
 *749
 
 (La.App. 1st Cir.6/9/06), 938 So.2d 766
 
 (Anglin II).
 
 The appellants filed suit against their brother, William H. Anglin, and the Louisiana Federal Land Bank Association, FLCA (the Bank), seeking a declaratory judgment annulling the donation of their interests in certain immovable property to William and declaring that a subsequent mortgage in favor of the Bank did not encumber their interests in the property. The first two appeals dealt with the claims against the Bank, ultimately affirming the dismissal of the Bank from the litigation after concluding that it had acted in good faith and reasonably relied on the public records in allowing William to borrow funds secured by the entirety of the property. The judgment concerning the appellants’ remaining claims against William is the subject of this appeal.
 

 The five appellants, along with Kenneth R. Anglin and defendant William H. Ang-lin, are the children of Hillard Anglin. The appellants’ claims stem from their inheritance of an undivided interest in 277 acres of land located in Washington Parish, Louisiana. Their grandparents, Baty and Maggie A. Anglin, acquired this property during their marriage. Baty and Maggie had four children, one of whom was Hillard Anglin, the appellants’ father. After Batyrs death, Maggie was recognized as the owner | sof an undivided 50% interest in the property and the four children were recognized as co-owners in indivisión of the remaining 50% interest. Thus, after Baty’s death, Hillard Anglin owned an undivided 12.5% interest in the property. Accordingly, when Hillard die d, each of his seven children inherited an undivided 1.7875% interest in the property. Hillard predeceased his mother, Maggie. According to a September 7, 2000 judgment of possession in Maggie’s succession, Hil-lard’s seven children received an additional 12.5% undivided interest in her 50% undivided interest in the property, or 6.25%. Therefore, when this suit was filed in April 2002, each of Hillard’s seven children would have owned an undivided 2.6786% interest in the property.
 
 [1]
 

 However, in December 1998, William had arranged a meeting with his siblings, after which the appellants agreed to donate them interests to him so he could take the lead in obtaining ownership of the entire tract, either by purchase from the other co-owners or by partition. The acts of donation to William were executed in March 1999.
 
 [2]
 
 The appellants were under the impression that the acts of donation were not going to be recorded, but were being executed simply to help William acquire the rest of the undivided interests in the property, after which each of the seven siblings would receive an undivided 1/7 ownership interest in the property. However, William had the acts of donation notarized and recorded, thereby showing him on the public records as the sole owner of the undivided interests in the property inherited by him and his siblings. In 2000 and 2001, William acquired the rest of the undivided interests in the property from the other co-owners by purchase and by partition by licitation. After those acquisitions, in September 2001, William executed an act of collateral mortgage in favor of the Bank, encumbering the entire 277 acres.
 
 [3]
 

 The appellants sued to have the acts of donation declared null, to have the court
 
 *750
 
 Rconvey to each of them an undivided 1/7 interest in the property, and to have the court declare that the Bank’s mortgage did not encumber their undivided interests in the property. After this court recognized the validity of the Bank’s mortgage in
 
 Anglin II,
 
 they continued to litigate their claims against William. On the date set for trial, the parties entered a number of documents and depositions into the record and agreed to submit the matter to the court on the basis of the record. After considering the evidence, the court stated in written reasons for judgment that the acts of donation were null, because they were not executed in the presence of the notary public who signed them. Therefore, the court concluded that the appellants still owned their undivided interests in the property, which was stated as 1.7857% each. The court also recognized that the mortgage still attached to the entire property, because the Bank had obtained the mortgage in good faith and in reliance on the public records. In a judgment signed December 8, 2008, the court recognized that each of the appellants owned an undivided 1.7857% interest in the 277 acres of land, awarded them $5000 in attorney fees, assessed all court costs to William, and dismissed William’s claims for attorney fees and costs relating to his acquisition of the rest of the property.
 

 DISCUSSION
 

 Ownership of the Property
 

 The appellants assign as error the court’s failure to recognize that each of them is entitled to an undivided 1/7 interest in the property, in accord with their original agreement with William. We find no merit in this argument. Louisiana Civil Code article 1839 states, in pertinent part:
 

 A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
 

 Assuming that there was an agreement among the siblings concerning the eventual transfer to each of them of an undivided 1/7 interest in the property, there is no evidence that this agreement was ever con-fected with the formalities required by Article 1839. Nor were the requirements for a valid oral transfer met. Therefore, any such agreement was ineffective as a transfer or promise to transfer the immovable property.
 
 See
 
 LSA-C.C. art. 2440;
 
 see also East Tangipahoa Dev. Co., LLC v. Bedico Junction, LLC,
 
 08-1262 (La.App. 1st Cir.12/23/08), 5 So.3d 238, 244,
 
 writ denied,
 
 09-0166 (La.3/27/09), 5 So.3d 146;
 
 Southern Casing of Louisiana, Inc. v. Houma Avionics, Inc.,
 
 00-1930, 00-1931 (La.App. 1st Cir.9/28/01), 809 So.2d 1040, 1051. The trial court was legally correct in determining that the appellants were not entitled to more than their inherited interests in the property.
 
 [4]
 

 However, we note that the trial court’s judgment contains a mathematical error, in that the seven children inherited an
 
 *751
 
 undivided 12.5% interest in the property from their father’s succession, as well as an undivided 6.25% interest from their grandmother’s succession. Therefore, the judgment should have stated that each of the appellants was recognized as the owner of an undivided 2.6786% interest in the property, as previously discussed. The judgment will be amended accordingly.
 

 Attorney Fees/Fraud
 

 The appellants also claim the trial court erred in making an unreasonably low award of attorney fees to them. In his answer to the appeal, William contends the award of attorney fees was legal error or, in the alternative, was too high.
 
 [5]
 
 Addressing first whether the award of attorney fees was legally appropriate, we note that attorney fees are not allowed under Louisiana law except where authorized by statute or contract.
 
 See Whiddon v. Livingston Parish Council,
 
 04-1126 (La.App. 1st Cir.5/6/05), 915 So.2d 863, 866. The trial court stated in written reasons for judgment that the acts of donation and the mortgage were procured by fraud and referred to LSA-C.C. art. 1958, which states that “[t]he party against whom rescission is granted because of fraud is hable for damages and attorney fees.”
 
 See Osborne v. McKenzie,
 
 43,658 (La.App. 2nd Cir.10/22/08), 998 So.2d 137, 144-45,
 
 writ denied,
 
 08-2555 (La.1/9/09), 998 So.2d 726. William contends there was no fraud, and therefore, the award of attorney fees was legal error.
 

 | (¡Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953. Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. art. 1957. Fraud cannot be predicated on mistake or negligence, no matter how gross. Fraudulent intent, which constitutes the intent to deceive, is a necessary element of fraud.
 
 Whitehead v. American Coachworks, Inc.,
 
 02-0027 (La.App. 1st Cir.12/20/02), 837 So.2d 678, 682. The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard of review.
 
 Boudreaux v. Jeff,
 
 03-1932 (La.App. 1st Cir.9/17/04), 884 So.2d 665, 672.
 

 The two-part test for the appellate review of a trial court’s factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trier of fact; and 2) whether the record further establishes that the finding is not manifestly erroneous.
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trier of fact’s finding, no additional inquiry is necessary to conclude there was manifest error. However, if a reasonable factual basis exists, an appellate court may set aside a factual finding only if, after reviewing the record in its entirety, it determines the factual finding was clearly wrong.
 
 See Stobart v. State, through Dep’t of Transp. and Dev.,
 
 617 So.2d 880, 882 (La.1993);
 
 Moss v. State,
 
 07-1686 (La.App. 1st Cir.8/8/07), 993 So.2d 687, 693,
 
 writ denied,
 
 08-2166 (La.11/14/08), 996 So.2d 1092.
 

 The evidence reviewed by the trial court included the depositions of all of the appellants, William, and the attorney who originally represented all of the siblings, Rodney C. Cashe. According to the appellants, William represented to them that the acts of donation were not actually transferring their ownership interests to
 
 *752
 
 him, but that he would simply be the nominal owner in order to unify the property, after which the ownership would be divided, such that each of the siblings would own an undivided 1/7 interest in the whole. The Bank’s loan, secured by a mortgage on the property, would 17finance the acquisition of the rest of the property, and timber on the land would be sold to repay the loan. Mr. Cashe confirmed that his original understanding was the same as that of the appellants, namely, that the seven siblings had a collective goal to own the 277 acres in equal portions, and their actions and his were designed to facilitate that goal. To that end, the acts of donation were prepared and, although they were not signed in his presence, he notarized them.
 
 [6]
 
 After William had acquired the remaining undivided interests in the property in his name, Mr. Cashe realized that William intended to claim full ownership of the property and did not intend to divide ownership with his siblings. At this point, recognizing a conflict of interest, Mr. Cashe withdrew as counsel. Based on this evidence, we conclude there was a reasonable factual basis for the trial court to find that William intentionally misrepresented or suppressed the truth in order to obtain an unjust advantage over his siblings. The record as a whole does not show that this factual finding was clearly wrong. Therefore, having rescinded the acts of donation due, in part, to fraud in their execution, the trial court had a legal basis for the award of attorney fees to the appellants.
 

 Our next consideration is whether the amount of attorney fees awarded was reasonable. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence of counsel; and (10) the court’s own knowledge.
 
 See
 
 Rule 1.5(a) of the Rules of Professional Conduct;
 
 State, Dep’t of Transp. and Dev. v. Williamson,
 
 597 So.2d 439, 442 (La.1992);
 
 Mayfield v. Reed,
 
 43,226 (La.App. 2nd Cir.4/30/08), 981 So.2d 235, 241. The trial court has much discretion in fixing an award of attorney fees, and its award will not be modified on appeal absent a showing of an abuse of discretion.
 
 Regions Bank v. Automax USA, L.L.C.,
 
 02-1755 (La.App. 1st Cir.6/27/03), 858 So.2d 593, 595,
 
 writ denied,
 
 03-2131 (La.11/7/03), 857 So.2d 503.
 

 laAt the hearing during which the attorney fee award was discussed, counsel for appellants brought to the court’s attention an affidavit he had filed, showing $15,000 in attorney fees — 100 hours at $150/hour— incurred in handling this case. There were no expenses shown on the affidavit. There was some discussion at the hearing concerning the fact that much of the time was involved in pursuing the appellants’ claims against the Bank, including the two prior appeals, and the fact that the appellants did not get the results they sought in this litigation. Without specifically mentioning any of the above factors or explaining its decision, the court awarded $5,000 in attorney fees.
 

 In order to determine whether the court abused its discretion in this award, we must examine the work done by the attorney for the appellants in light of the factors enumerated in the jurisprudence and
 
 *753
 
 the rules of professional conduct. The appellants did not obtain all of the results they wanted, although they were recognized as the owners in indivisión of the property they had inherited. The litigation did not involve any novel or difficult legal issues, but the record shows the lawsuit was pursued diligently by appellants’ counsel. We do not think the fee should be discounted because of the time expended in the claim against the Bank concerning the mortgage; William encumbered the appellants’ undivided interests in the property with that mortgage, and thus, necessitated those legal efforts on their behalf. Counsel for the appellants participated in written discovery, appeared at eight depositions, briefed and argued an exception and a motion in district court, attended pre-trial conferences, and briefed and argued the issues in three appeals to this court. We do not find the hourly fee excessive, and it appeal's all of the time entries are reasonable for the work described. Accordingly, we find the court abused its discretion in awarding only $5,000 in attorney fees. Recognizing that the appellants did not get all of the results they sought, we will amend the judgment to award $13,000 in attorney fees.
 

 PaHial Release of Mortgage
 

 The appellants contend the court erred in failing to order William to have their undivided interests in the property released from the mortgage in favor of the Bank. After recognizing that the Bank’s mortgage still attached to the entire property, the trial |9court stated, in written reasons:
 

 The six siblings, however, have a claim against William for their portions of the mortgage since both the “donations” and mortgage were obtained by fraudulent means.
 

 From the record, it appears that the controversy concerning this statement, along with the need to set the attorney fees, delayed the signing of the final judgment for almost a year after the written reasons were signed. Ultimately, the final judgment signed by the court did not include any language concerning the release of the Bank’s mortgage affecting the appellants’ undivided interests in the property.
 

 We find no error in that decision. In
 
 Anglin II,
 
 this court recognized the validity of the Bank’s mortgage over the entire property, and the appellants’ claims against the Bank were dismissed. Therefore, the court could not require the Bank to grant a partial release of its mortgage, nor could it give the appellants or William the authority to do so. Simply put, the court could not order William to do something that would be impossible for him to accomplish. Even if the court had ordered William to pay damages to the appellants to compensate them for the fact that their property interests were encumbered by the mortgage, the mortgage itself would still remain in place.
 
 [7]
 
 Therefore, the court did not err in failing to order William to have the appellants’ property interests released from the Bank’s mortgage.
 

 Assessment of Costs
 

 William argues that the court erred in imposing all court costs on him, rather than assessing part or all of the costs against the appellants. As a general rule, the party cast in judgment should be assessed with court costs.
 
 See
 
 LSA-C.C.P. art. 1920. Article 1920 further provides that except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party as it may consider equitable. The trial court may even assess costs against a
 
 *754
 
 party who prevails to some extent on the merits.
 
 Adams v. Rhodia, Inc.,
 
 07-0897 (La.App. 1st Cir.2/13/09), 5 So.3d 288, 289. On appeal, the trial court’s assessment of costs will not be disturbed in the absence of an abuse of discretion.
 
 Steadman v. Georgia-Pacific Corp.,
 
 95-1463 (La.App. 1st Cir.4/6/96), 672 So.2d 420, 428,
 
 writ denied,
 
 96-1494 (La.9/20/96), 679 So.2d 440.
 

 We recognize that the trial court could have required both sides to bear some portion of the court costs in this case, but we find no abuse of discretion in assessing William with all of the costs. William’s actions made it necessary for the appellants to bring this lawsuit and incur the costs of litigating. Therefore, even though the appellants did not succeed in all of their requests, it was equitable and within the trial court’s discretion to require William to pay the court costs.
 

 CONCLUSION
 

 Based on the foregoing, we amend the judgment of December 8, 2008, to recognize that Randall Anglin, David Anglin, Beth Anglin Mora, Pamela Anglin Rowell, and Andrew Darryl Anglin are each the owner of an undivided 2.6786% interest in the property. We further amend the judgment to award $13,000 in attorney fees to the appellants. In all other respects, the judgment is affirmed. Because that judgment sets out the legal description of the property at issue, a copy of the judgment is attached and made a part hereof.
 
 [8]
 
 Each party is to bear its own costs of this appeal.
 

 AMENDED AND AFFIRMED AS AMENDED.
 

 In
 

 
 *755
 
 [[Image here]]
 

 
 *756
 
 [[Image here]]
 

 
 *757
 
 [[Image here]]
 

 [1]
 

 . 12.5% + 6.25% = 18.75%, and 18.75% -4- 7 = 2.6786%.
 

 [2]
 

 . Although not a party to this litigation, Kenneth Anglin did execute one of the acts of donation.
 

 [3]
 

 .As this court noted in
 
 Anglin II,
 
 neither Hillard's nor Maggie’s successions had been opened when tire acts of donation were executed. In
 
 Anglin II,
 
 this court announced its acceptance of the Second Circuit’s analysis of LSA-C.C. arts. 935 and 938 in
 
 Anding v. Anding,
 
 37,778 (La.App. 2nd Cir.10/29/03), 859
 
 *750
 
 So.2d 901, in which the court concluded that a successor could exercise rights of ownership with respect to his interest in a particular thing, as well as in Inis entire interest in a succession. Based on that analysis, this court found that the Bank had reasonably relied on the public records in concluding that William could encumber 100% of the property.
 
 Anglin II,
 
 938 So.2d at 773-74.
 

 [4]
 

 . William answered the appeal, claiming the court erred in failing to find him the owner of all of the property. However, he did not brief that issue. Therefore, we consider it abandoned. See Uniform Rules of Courts of Appeal, 2-12.4.
 

 [5]
 

 . William’s answer to the appeal also seeks an award of attorney fees and costs for the partition suit in which he acquired a portion of the property. This issue was also not briefed, and is considered abandoned.
 

 [6]
 

 . In fact, two of the appellants did not actually sign (he act of donation that purportedly bears their signatures.
 

 [7]
 

 . We note that the petition did not request such damages; therefore, the court could not have awarded them.
 

 [8]
 

 .
 
 See
 
 LSA-C.C.P. art. 1919.