McClendon, j.
12In this redhibition case involving a boat, plaintiff appeals the trial court judgment to the extent that it awarded the defendant manufacturer credit for use and denied plaintiff damages for mental anguish and loss of profits. Plaintiff also seeks an increase in the amounts awarded for preservation of the boat and attorney’s fees. For the following reasons, we amend the judgment to decrease the amount awarded defendant for a use credit, and we affirm the judgment as amended and award additional attorney’s fees.
FACTS AND PROCEDURAL HISTORY
On April 1, 2005, Travis Lovell purchased a used 2004 Blazer Bay 2220 Fisherman boat, motor, and trailer from Derek Johnson for $26,500.00. Mr. Lovell subsequently discovered stress cracks along the port side of the boat. In May 2006, the boat was shipped to the manufacturer, Blazer Boats, Inc. (Blazer), for repairs. The manufacturer made said repairs and returned the boat to Mr. Lovell, after which Mr. Lovell went on two fishing trips. However, the stress cracks began to reappear. In October 2006, Blazer, instead of repairing the stress cracks on the vessel for a second time, agreed to manufacture a new hull and cap for the vessel.
When stress cracks began to reappear in the reconditioned vessel in 2008, Mr. Lo-vell again sent the boat to Blazer for repairs. Blazer repaired the stress cracks, but after Mr. Lovell received the boat and began using it, the stress cracks reappeared. Additionally, Mr. Lovell noticed a hole on the starboard side of the stern of the boat, which caused water to leak into the vessel.
On February 12, 2009, Mr. Lovell filed suit against Blazer, alleging damages for breach of warranty, negligence, fraud, and a claim in redhibition.[1] Following a bench trial, the trial court rendered judgment rescinding the sale of |sthe boat and trailer and assigning a value of $21,500.00.[2] The court also awarded Mr. Lovell $150.00 for costs of preservation of the boat, minus a $19,500.00 credit for use of the boat and trailer. The trial court awarded no damages for mental anguish and loss of income/profit and awarded total damages, after offset, in the amount of $2,150.00. Furthermore, the trial court awarded Mr. Lovell $5,000.00 in attorney’s fees.
Mr. Lovell has appealed, assigning the following as error:
1. The trial court erred in awarding defendant an offset in the amount of $19,500.00.
2. The trial court erred in not awarding plaintiff damages for mental anguish.
3. The trial court erred in not awarding damages for loss of income/profit.
4. The trial court erred in awarding damages to plaintiff for costs of preservation of the boat in the amount of only $150.00, as that damage award should have been higher.
*553 5. The trial court erred in awarding attorney’s fees to plaintiff in only the amount of $5,000.00, as the only evidence introduced at trial was that the attorney’s fees at the time of trial were between $8,000.00 and $9,000.00.
6. The trial court erred in failing to award any damages because of the fraud of Blazer Boats, and specifically, the trial court did not even address the issue of fraud.
7. The trial court erred in failing to address the breach of warranty claim by plaintiff.
Mr. Lovell also requests an award of additional attorney’s fees for prosecution of this appeal.
DISCUSSION

REDHIBITION

Louisiana Civil Code article 2520, regarding warranty against redhibitory defects, provides as follows:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
|4A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
The extent of a seller’s liability to a buyer for breaching this warranty depends on whether the seller knew, or did not know, of the defect. See LSA-C.C. art. 2531 and 2545. With regard to a seller who knew of the defect, LSA-C.C. art. 2545 provides as follows:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
Although the code articles on redhibition appear to allow a suit by a buyer only against a “seller” for redhibitory defects, the Louisiana Supreme Court has recognized that a buyer can recover directly from the manufacturer for breach of warranty, despite the fact that there is no privity of contract between them. See Aucoin v. Southern Quality Homes, LLC, 07-1014, p. 9 (La.2/26/08), 984 So.2d 685, 692 (iciting Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377, 380-81 (La.1972)).[3]
*554 A manufacturer is conclusively presumed to have knowledge of defects in the object it manufactures. Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1126 (La.1992). Thus, because of this presumption of knowledge, the manufacturer “is deemed to be in bad faith in selling a defective product” and is pliable to the buyer for all damages recoverable under LSA-C.C. art. 2545. Pratt v. Himel Marine, Inc., 01-1832, p. 14 (La.App. 1 Cir. 6/21/02), 823 So.2d 394, 404, writs denied, 02-2128, 02-2025 (La.11/1/02), 828 So.2d 571, 572.

A. Nonpeeuniary Damages

Mr. Lovell contends that the trial court, in rescinding the sale through redhibition, erred in failing to award nonpeeuniary damages for mental anguish. Mr. Lovell notes that Article 2545 allows recovery of nonpeeuniary damages when the requirements set forth in Article 1998 are met. See Comment (j) to LSA-C.C. art. 2545. Louisiana Civil Code article 1998 provides:
Damages for nonpeeuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpeeuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.
If the obligee can show that he intended to gratify a significant and nonpe-cuniary interest by way of the contract, and the nature of the contract supports his contention, and that the obligor either knew or should have known that failure to perform would cause nonpeeuniary loss to the obligee, then nonpeeuniary damages may be recovered. Young, 595 So.2d at 1133.
To illustrate under what circumstances an award of nonpeeuniary damages may be appropriate, the supreme court wrote:
Although purchase of a new truck or car may be prompted by both the pecuniary interest of securing transportation and the nonpeeuniary interest relating to enjoyment, taste, and personal preference of owning and driving the chosen vehicle, the nature of the contract is primarily pecuniary (unless other factors evidence a different conclusion). Contrast the contract of purchase made in a standard new car sale with a contract for purchase of an antique car that, while it might be driven on the streets, represents the obligee’s desire to own, and perhaps to show, a distinctive, unique automobile. Or, contrast the traditional new car purchase contract with a contract for purchase of a specifically-designed, custom-built vehicle. [Footnote omitted.]
\Jd. In Young, the supreme court concluded that the purchase of a pickup truck did not warrant an award of nonpeeuniary damages under the specific facts of that case, reasoning as follows:
In this case, the nature of the contract does not make it evident, nor do the facts and circumstances surrounding the formation of the contract demonstrate that Young purchased the new pickup truck from Bordelon Motors, Inc. for a significant nonpeeuniary purpose. Although he testified that he wanted a larger cab area so that he could lie down on trips if his back started to bother him, that desire seemed more incidental in nature than that which would constitute a significant nonpeeuniary interest in purchasing the truck. The rest of his testimony concerned the need to use the
*555 truck in his service station business to haul tires or to transport customers while their cars were being fixed. Even his plans for recreational use of the vehicle (i.e., fishing trips) constituted the pecuniary interest of requiring suitable transportation to haul his fishing boat.

Id.

More recently, the Second Circuit Court of Appeal concluded that the trial court did not commit manifest error in failing to instruct the jury on nonpecuniary damages in a redhibition case involving a motor home. See Jones v. Winnebago Industries, Inc., 47,137 (La.App. 2 Cir. 5/16/12), 92 So.3d 1113. The Jones court reasoned:
In the instant case, the Winnebago plaintiffs purchased from the dealer was neither custom-built nor specifically designed. While plaintiffs did have a valid nonpecuniary interest, to spend quality time with their children (and family and friends) traveling, camping and enjoying outdoor activities, it can be argued that most if not all purchasers of RVs have the same or similar interests. This does not change the fact that the primary purpose of the purchase of a recreational vehicle is transportation/recreational travel. Although a close call, we cannot find clear error in the trial court’s determination that plaintiffs failed to establish their entitlement to nonpecuniary damages under La. C.C. art. 1998.
Jones, 47,137 at p. 14, 92 So.3d at 1122.
In the instant case, the boat Mr. Lovell purchased from Mr. Johnson was neither custom-built nor specifically designed. Also, Mr. Lovell did not indicate that he purchased the boat due to any unique quality or characteristic that the boat possessed. Rather, when questioned why he purchased this specific boat from Mr. Johnson, Mr. Lovell responded: “He’s a friend of mine. He got into a bind at work and was looking at losing the boat. At that time[,] I purchased the |7boat from him for recreational fishing.” Considering the foregoing, we cannot conclude that the trial court was clearly wrong in failing to award nonpecuniary damages. Accordingly, assignment of error number 2 is without merit.

B. Lost Profits and Loss of Income

Mr. Lovell also contends that the trial court’s failure to award damages for lost profits/income constitutes manifest error. Mr. Lovell testified that in June 2008, he opened a business, Reelin Good Charters, LLC. Mr. Lovell notes that his tax returns reflected revenues from his business in 2008 totaling $500.00 and in 2009 totaling $15,656.00. Mr. Lovell testified that because of problems with his boat, however, he was not actively pursuing business like he should have.
Damages for lost profits must be proven to a reasonable certainty and must not be based on evidence that is speculative or conjectural. Pelts & Skins Export, Ltd. v. State ex. rel. Dep’t of Wildlife and Fisheries, 97-2300, pp. 11-14 (La.App. 1 Cir. 4/1/99), 735 So.2d 116, 126-28, writs denied, 99-2036, 99-2042 (La.10/29/99), 748 So.2d 1167, 1168. An appellate court will not disturb such damage awards in the absence of a manifest abuse of discretion. Pelts & Skins Export, Ltd., 97-2300 at p. 11, 735 So.2d at 126.
Although Mr. Lovell testified that he lost charters due to his boat’s condition, it is uncontradicted that Mr. Lovell was able to take charters on other occasions. Moreover, Mr. Lovell provided no evidence with regard to the specific charters he lost, and any award under these circumstances would be mere speculation. Accordingly, we conclude that the trial court did not manifestly err or abuse its discretion in *556 denying this award. . Assignment of error number 3 is without merit.

C. Preservation of the Boat

The trial court awarded Mr. Lovell $150.00 for costs of the preservation of the boat. Mr. Lovell notes, however, that he testified he paid $150.00 a month to Blue Marlin storage to store his boat and had been doing so since 2008. Mr. Lovell asserts that the judgment was contrary to the evidence and that the [Sdamages for preservation of the boat should be increased from $150.00 to $3,750.00 for monthly storage from January 2008 through May 2010.
At trial, however, Mr. Lovell only produced one invoice in the amount of $150.00 reflecting costs of storing the boat at Blue Marlin. The trial court awarded Mr. Lo-vell the total amount reflected by the invoice. As the trier-of-fact, a trial court is charged with assessing the credibility of witnesses and, in so doing, is free to accept or reject, in whole or in part, the testimony of any witness. In re Succession of Wagner, 08-0212, p. 19 (La.App. 1 Cir. 8/8/08), 993 So.2d 709, 722. As such, we cannot conclude that the trial court’s award of $150.00 for preservation of the boat was manifestly erroneous. Assignment of error number 4 is without merit.

D. Credit for Use

Mr. Lovell contends that the trial court erred as a matter of law in awarding $19,500.00 to Blazer as a credit for use. In reaching this amount, the trial court relied upon Mr. Lovell’s estimate that he used the boat 78 times since its purchase and upon the testimony of Eric Boudreaux,[4] who opined that it would cost $250.00 per day to rent a 22-foot boat. Mr. Lovell notes, however, that Mr. Boudreaux’s testimony applied to a normal Blazer boat and submits that there is no evidence that a boat such as Mr. Lovell’s — cracked and with a hole in it — could be rented at all or at what price. Moreover, Mr. Lovell points out that Mr. Boudreaux testified he could not sell Mr. Lovell’s boat because of its condition.[5] In light of the foregoing, Mr. Lovell concludes that Blazer should not be entitled to any credit for use.
Under Louisiana law, both good faith and bad faith sellers are entitled to a credit for a buyer’s use if the buyer reaped a benefit from that use. LSA-C.C. arts. 2531, 2545. There is no established rule for the calculation of credit for use. Chenniliaro v. Kaufman & Broad Home Systems of Louisiana, Inc., 93-1126 (La. App. 1 Cir. 1/19/94), 636 So.2d 246, 253. Compensation for the buyer’s use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller’s attempts to repair. Alexander v. Burroughs Corp., 359 So.2d 607, 610-611 (La.1978). The burden of proof is on the party asserting the entitlement to the credit. Alleman v. Hanks Pontiac-GMC, Inc., 483 So.2d 1050, 1057 (LaApp. 1 Cir.1985), wrii denied, 485 So.2d 54 (La.1986).
This court, in the context of motor vehicles, has rejected using lease values to *557 determine credit for use because “it has been universally recognized that the credit for use of a defective vehicle should not be in the same amount of that for a non-defective vehicle.” Breaux v. Winnebago Industries, Inc., 282 So.2d 768, 769 (La.App. 1 Cir.1973). In the context of a mobile home, this court indicated that the defendants, who only introduced evidence of the monthly rental value of a non-defective mobile home, failed to prove the value of the use of a mobile home that possessed the defects of which plaintiffs complained such that this court denied defendants’ attempt to have the credit for use award increased. See Chenniliaro, 636 So.2d at 253.[6]
We recognize, as did the trial court, that Mr. Lovell did benefit from use of the boat for recreational fishing and as a charter boat. However, the credit for use of a defective boat should not be in the same amount of that for a non-defective boat. See Breaux, 282 So.2d at 769. As such, the trial court manifestly erred in awarding the total sum of $19,500.00 for the use of a defective boat. We conclude that the highest amount the trial court could have awarded for credit for use in this instance is $10,000.00. Accordingly, we find |inmerit in assignment of error number 1, and we will amend the judgment to reflect a credit for use of $10,000.00.

E. Attorney’s Fees

Mr. Lovell also asserts the court’s award of only $5,000.00 in attorney’s fees was manifestly erroneous. Mr. Lovell avers that at the time of trial, he had been billed between $8,000.00 and $9,000.00, not including the costs for trial. Mr. Lovell submits that the trial court should have awarded at least $9,000.00 in attorney’s fees insofar as that was the only evidence the trial court had.
We note that the factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence of counsel; and (10) the court’s own knowledge. See Rule 1.5(a) of the Rules of Professional Conduct; Anglin v. Anglin, 09-0844, p. 7 (La.App. 1 Cir. 12/16/09), 30 So.3d 746, 752. The trial court has much discretion in fixing an award of attorney fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. Id.
The trial court ruled that “given the skill of counsel and complexity of the case, Travis Lovell is awarded Five Thousand Dollars ($5,000.00) in attorney’s fees.” The trial court presided over the entire trial and made its own determination of the fee it deemed reasonable. After reviewing the entirety of the record and considering the factors enunciated above, we cannot conclude that the trial court abused its discretion in awarding $5,000.00 in attorney’s fees. Accordingly, assignment of error number 5 is without merit.
Mr. Lovell also requests that this court award him additional attorney’s fees for this appeal. We note that the basis for awarding additional attorney’s fees for work performed on appeal is that the litigant incurred additional expense to protect rights or increase awards established at the trial level. Vander v. Safeway Ins. Co. *558 of LA., 08-888, p. 12 (La.App. 3 Cir. 2/25/09), 5 So.3d 968, 976. We recognize that such awards are determined on a case by case basis and may be awarded even if the party seeking the fees is less than 100% successful. Vander, 08-888 at p. 11, 5 So.3d at 975.
In this case, Mr. Lovell successfully sought reduction of the credit for use awarded by the trial court from $19,500.00 to $10,000.00. Considering the work performed on appeal by counsel for Mr. Lo-vell, we find that an additional award of $2,000.00 in attorney fees is reasonable under these circumstances. We therefore will award Mr. Lovell an additional $2,000.00 as attorney fees for this appeal.

FRAUD AND BREACH OF WARRANTY

Mr. Lovell asserts that while the judgment granted his claim for redhibition, the trial court failed to address two key issues — fraud and breach of warranty.[7] Mr. Lovell notes that when Blazer sent him his “new” boat in 2006, it contained the same hull identification number as his 2004 boat. Mr. Lovell avers that the testimony of his expert, David Cole, an independent marine consultant, and federal regulations[8] make it clear that if Blazer gave Mr. Lovell a new hull and cap, then Blazer should have issued a new hull identification number. Mr. Lovell urges that use of the same number reflects that Blazer did not replace his boat with a new hull and cap in 2006. Mr. Lovell avers that further evidence of this fact is that stress cracks started appearing in the same spots shortly after he received the new hull. Mr. Lovell concludes that these actions constitute fraud under LSA-C.C. art. 1953.[9]
112Where a trial court’s ruling is silent as to any demand at issue under the pleadings, such silence constitutes an absolute rejection of such demand. Tramontin v. Tramontin, 04-2286, p. 3 n. 2 (La.App. 1 Cir. 12/22/05), 928 So.2d 29, 31 n. 2. writ denied, 06-0155 (La.5/26/06), 930 So.2d 20. The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard of review. Boudreaux v. Jeff, 03-1932, p. 9 (La.App. 1 Cir. 9/17/04), 884 So.2d 665, 672. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact’s determination is manifestly erroneous or clearly wrong. Smith v. Louisiana Dep’t of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id.
The following evidence supports the trial court’s implicit conclusions. Keith Craft, Blazer’s owner, testified that Blazer manufactured a new hull for Mr. Lovell’s boat in October 2006, but did not place a new hull number “[b]ecause it wasn’t going to be a *559 complete new boat.” Mr. Craft explained that the “console, the seating, the motor, the wiring, the jack plates, and the trolling motor” were not new. As such, Mr. Craft indicated that although the hull and cap was manufactured in 2006, the boat was manufactured in 2004. Additionally, Mr. Craft recognized that after Blazer manufactured the new hull, cracks began to appear in a similar location as those on the prior hull. However, Mr. Craft indicated that Blazer “felt [the boat] wasn’t sitting on the trailer right, it wasn’t being supported,” so, in addition to fixing the stress cracks again, Blazer sent the trailer to be readjusted.
In light of the foregoing testimony, we cannot conclude that the trial court was manifestly erroneous in failing to find that Blazer committed fraud. Accordingly, assignment of error numbers 6 and 7 are without merit.
| ^CONCLUSION
For the foregoing reasons, we amend the September 15, 2010 judgment to reduce the value of Mr. Lovell’s use of the boat and trailer from $19,500.00 to $10,000.00. We affirm the judgment in all other respects. Also, we award Mr. Lovell an additional $2,000.00 in attorney’s fees for the work performed by his counsel on appeal. Costs of this appeal are assessed to appellee, Blazer Boats, Inc.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED; ATTORNEY’S FEES AWARDED.
PETTIGREW, J., concurs.
WELCH, J., concurs in part and dissents in part with reasons.
GUIDRY, J., concurs in the result.
HIGGINBOTHAM, J., concurs in part and dissents in part with reasons.

. On September 28, 2009, Mr. Lovell filed a first supplemental and amending petition alleging damages under the Louisiana Products Liability Act.

. The motor was not part of the original Blazer package, but had been placed on the boat by the previous owner. After purchasing the boat, Mr. Lovell sold the motor for $5,000.00. Mr. Lovell does not challenge the value the trial court assigned the boat and trailer.

. Additionally, the buyer may bring an action against all sellers in the chain of sales back to the original manufacturer to rescind a sale for breach of implied warranty. See Comment (d) to LSA-C.C. art. 2545 and Womack and Adcock v. 3M Business Products Sales, Inc., 316 So.2d 795, 796 (La.App. 1 Cir. 1975).

. Mr. Boudreaux owns G & F Sporting Center and has been selling Blazer boats since 2000.

. Similarly, Larry Tidwell, who has owned , Tidwell's Fiberglass for over twenty years and makes repairs on fiberglass boats regularly, testified that the stress fractures in Mr. Lo-vell's boat were “excessive” and that he had never repaired a boat with that amount of stress cracks in it. Mr. Tidwell indicated that if Mr. Lovell continued to run the boat, it would likely sustain additional damage.

. This court did not disturb the jury’s $400 award to defendants for loss of use because the plaintiffs had not appealed that issue. Chenniliaro, 636 So.2d at 253 n. 3.

. Mr. Lovell concedes that this court need only address the breach of warranty issue in the event we conclude that he received a new boat in 2006. Because we find no manifest error in the trial court’s finding that Mr. Lovell did not receive a new boat in 2006, we do not address the breach of warranty claim.

. See 33 C.F.R. § 181.23, 33 C.F.R. § 181.25, 33 C.F.R. § 181.31, and 33 C.F.R. § 181.35.

.Louisiana Civil Code article 1953 provides:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.