# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0397

### ROBERT JAMES RAGLAND

### VERSUS

### KATHERINE DIAMOND RAGLAND

*Judgment Rendered:* DEC 1 8 2025

\* \* \* \* \* \* \* \*

Appealed from the
19th Judicial District Court, Family Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. F209479, Division B

The Honorable Erika Green, Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Amira A. Makke<br>Baton Rouge, Louisiana<br>and<br>Christopher T. Cascio<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>Katherine Diamond Ragland |
| Karen D. Downs<br>Stacy S. Brown<br>Edy L. Koonce<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>Robert James Ragland |

\* \* \* \* \* \* \* \*

BEFORE: THERIOT, PENZATO, AND BALFOUR, JJ.

**THERIOT, J.**

Katherine Diamond Ragland appeals a contempt judgment signed by the Family Court of the Parish of East Baton Rouge on December 6, 2023. Robert James Ragland answered the appeal, requesting additional attorney's fees and costs for defending and answering this appeal. For the following reasons, we grant the answer to the appeal and amend the December 6, 2023 judgment to increase the amount of attorney's fees assessed to Katherine Diamond Ragland from $53,500.00 to $55,500.00. As amended, we affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Robert James Ragland ("Robert") and Katherine Diamond Ragland ("Katherine") were married on June 28, 1997, thereafter establishing their matrimonial domicile in East Baton Rouge Parish. Twins named W.R. and P.R. were born of the marriage on January 15, 2011. Robert filed a petition for divorce and custody on June 6, 2017. A judgment of divorce was signed on September 5, 2018.

Throughout these proceedings, the parties have entered into several stipulations relevant to this appeal:

(1) In an October 5, 2017 stipulated judgment, Katherine was granted exclusive use of the parties' former matrimonial domicile ("the family home") in Baton Rouge, Louisiana. She agreed to pay the mortgage note, property taxes, and home insurance on the family home, while waiving her right to reimbursement.

(2) In a July 16, 2019 stipulated judgment, Robert and Katherine were awarded joint custody of W.R. and P.R., with Robert designated as the domiciliary parent. Robert and Katherine further agreed that they "shall not make posts on social media or publicly about the custody matters or about the other parent and/or his/her family."

(3) In a March 23, 2020 stipulated judgment, containing stipulations made in open court on March 3, 2020, Robert was granted permission to return to the family home on March 26, 2020, to prepare an

---

[1] These facts are taken in part from a prior appeal. See **Ragland v. Ragland**, 2022-0770 (La. App. 1 Cir. 12/22/22), 2022 WL 17847347 (unreported), writ not considered, 2023-00486 (La. 5/23/23), 360 So.3d 1255.

inventory of the parties' household items. The inventory was later rescheduled to August 20, 2020 at Katherine's request.

On May 1, 2020, Robert filed a petition for protection from abuse against Katherine pursuant to La. R.S. 46:2131, *et seq.*, on behalf of himself and the children. The matter was initially set for hearing on May 20, 2020, but later continued to June 17, 2020. The hearing was continued and reassigned numerous times, with many of the continuances being prompted by Katherine. Consequently, Robert's petition for protection from abuse was not heard by the trial court until February 2, 2022. See **Ragland v. Ragland**, 2022-0770 (La. App. 1 Cir. 12/22/22), 2022 WL 17847347 (unreported) at *2, *5, writ not considered, 2023-00486 (La. 5/23/23), 360 So.3d 1255.

On December 20, 2019, Robert filed a motion to compel Katherine to provide complete responses to discovery. On June 8, 2020, the trial court signed a judgment granting Robert's motion to compel and ordering Katherine to pay attorney's fees in the amount of $3,000.00, plus court costs.[2]

In a judgment signed by the trial court on September 22, 2020, Katherine was ordered to pay child support to Robert in the amount of $631.50 per month as direct support, plus 50% of the children's health insurance premiums ($168.81 per month). The trial court ordered that the current support award would be payable in two monthly installments in the amount of $400.15, payable on the 1st and 15th day of each month, commencing September 15, 2020. The trial court further ordered Katherine to pay an additional $200.00 per month commencing September 15, 2020 until the retroactive arrearages are paid.

**Robert's First and Second Rules for Contempt**

While the hearing on the petition for protection from abuse was pending, Robert filed two rules for contempt relevant to this appeal. First, on June 16, 2020, Robert filed a rule to modify custody and for contempt ("first rule for contempt"),

---

[2] The June 8, 2020 judgment did not include a deadline for the payment of attorney's fees.

3

alleging that Katherine had violated the July 16, 2019 stipulated judgment by making numerous social media posts about the ongoing custody matters. Robert further sought to have Katherine held in contempt for failing to pay the attorney's fees awarded in the June 8, 2020 judgment granting his motion to compel, alleging that Katherine had only paid $100.00 towards the $3,000.00 award of attorney's fees.

On July 2, 2021, Robert filed a rule for contempt ("second rule for contempt"), alleging that Katherine violated the October 5, 2017 stipulated judgment by having failed to pay the mortgage note for the family home since February 28, 2020, and removing certain items from the family home. Robert further alleged that two pieces of furniture in the family home – a buffet and a secretary desk – were locked during the August 2020 inventory, making the contents of those items inaccessible. Robert also requested the trial court's authorization to list and sell the family home without Katherine's concurrence.

**January 18, 2022 Hearing and Stipulations; February 22, 2022 Judgment**

At a January 18, 2022 hearing, the parties stipulated on the record to a date and time for Robert to re-enter the family home and complete his inventory. The parties further stipulated that Katherine would make accessible the items Robert was unable to inventory and that neither Katherine nor her mother, Betty Harris, who lived in the family home, would be present. Katherine also agreed to photograph the items missing from the home and any other items she had removed from the home, and provide those photographs to Robert's attorney by February 10, 2022. For any item that could not be photographed, Katherine agreed to execute a sworn statement providing the specific reasons why the item could not be photographed, the location of the item, and, if the item has been sold, the date of sale, buyer, and amount for which it was sold. These rulings were memorialized in a judgment signed on February 22, 2022.

**February 2, 2022 Hearing on Robert's Petition for Protection from Abuse and the Trial Court's February 3, 2022 Ruling**

The trial court held a hearing on Robert's petition for protection from abuse on February 2, 2022, and reconvened on February 3, 2022, granting Robert's petition for protection from abuse and issuing oral reasons for judgment. See **Ragland**, 2022 WL 17847347, at *5. This Court affirmed the February 3, 2022 judgment, and Katherine filed an untimely application for supervisory writs, which the Supreme Court of Louisiana did not consider. See **Ragland v. Ragland**, 2023-00486 (La. 5/23/23), 360 So.3d 1255.

**Robert's Third Rule for Contempt and the Parties' September 13, 2022 Stipulations**

On June 20, 2022, Robert filed a rule for arrearages and contempt ("third rule for contempt"), alleging that Katherine owed $9,811.22 in past due child support. Robert further alleged that Katherine violated the February 22, 2022 judgment by denying him access to the family home for the inventory on February 10, 2022, allowing Ms. Harris to be present, and removing the secretary desk – which was supposed to be made accessible to Robert for the inventory – from the family home. Robert also alleged that Katherine failed to timely provide photographs of each item she removed from the family home and further failed to provide a sworn statement detailing the items that she could not photograph.

On September 13, 2022, the parties stipulated in open court that Katherine would enroll and participate in an in-person domestic violence offender program within a week, and pay $7,000.00 to Robert on or before September 16, 2022, with these funds partially being applied to Katherine's child support arrearages. The parties further stipulated that Robert would have sole custody of P.R. and W.R., with Katherine having supervised visitation in accordance with the February 3, 2022 protective order "once she is enrolled in and participating in" the in-person domestic violence offender program and "the Director of the Program issues a

5

report that she is compliant with the [p]rogram." The trial court signed a judgment to this effect on September 26, 2022.

## Trial on Robert's First, Second, and Third Rules for Contempt and August 29, 2023 Written Reasons for Judgment

Trial on Robert's first, second, and third rules for contempt was held before Judge Pamela J. Baker on February 13, March 23, March 24, and June 23, 2023. The trial court also conducted a review of Katherine's visitation in accordance with the September 26, 2022 judgment.

On August 29, 2023, Judge Baker issued written reasons for judgment, finding Katherine in contempt for the following actions relevant to this appeal:

### First Rule for Contempt

(1) Making "inappropriate, immature" social media posts about the ongoing custody proceedings in direct violation of the July 16, 2019 judgment;

(2) Failing to pay the remaining balance of attorney's fees in the amount of $2,900.00, plus court costs, in violation of the June 8, 2020 judgment granting Robert's motion to compel.

### Second Rule for Contempt

(3) Failing to pay the monthly mortgage note on the family home since February 28, 2020, in direct violation of the October 5, 2017 judgment, resulting in a deferred principal balance in the amount of $39,547.02. The trial court further ruled that the deferred principal balance was Katherine's separate debt;

(4) Failing to make all items in the family home accessible to Robert for the inventory occurring on August 20, 2020, and removing certain items from the family home;

### Third Rule for Contempt

(5) Failing to timely pay child support in violation of the September 26, 2020 judgment, and failing to make payments towards the retroactive arrearage balance;

(6) Denying Robert entry into the family home on February 10, 2022, despite the parties' stipulations in open court on January 18, 2022, regarding the inventory taking place on that date;

6

(7) Allowing her mother, Ms. Harris, to be present at the family home on February 10, 2022, despite the parties' January 18, 2022 stipulations;

(8) Removing the secretary desk (which was locked during Robert's first attempt to inventory the household contents) from the family home prior to the February 10, 2022 inventory, despite the parties' January 18, 2022 stipulations; and

(9) Failing to provide photographs of the items missing from the family home and further failing to provide explanations for the missing items in a sworn statement, thus violating the parties' January 18, 2022 stipulations.

The trial court also granted Robert's request for authorization to act without Katherine's concurrence to list the family home for sale and to sell the home, finding that Katherine failed to maintain the family home such that it is in a state of decay, failed to cooperate in responding to offers to purchase the home, and "lives a great deal of the time in an apartment in New Orleans." The trial court further found that Robert was suffering financially as a result of the parties' continued ownership of the family home. The trial court declined to amend Katherine's visitation, finding that she failed to introduce sufficient evidence to show compliance with the domestic violence offender program as ordered in the September 26, 2022 judgment.

Lastly, the trial court awarded a total of $53,500.00 in attorney's fees, plus court costs, to Robert, consisting of $20,000.00 in attorney's fees for the filing of the first rule for contempt, $11,500.00 for the filing of the second rule for contempt, and $22,000.00 for the filing of the third rule for arrearages and contempt.

**Judge Baker's September 18, 2023 Recusal; Allotment to Judge Charlene Day and Judge Day's Recusal; Allotment to Judge Erika Green**

On September 18, 2023, after issuing written reasons for the contempt judgment but before signing the contempt judgment, Judge Baker recused from the instant matter. In her written reasons for recusal, Judge Baker wrote that Katherine

7

has made continuous defamatory and untrue statements about the trial court and its staff on social media, and further posted addresses and contact information for her husband and son. Judge Baker wrote that Katherine has "stalked the Court and any organization or body associated with the Court" such that "[t]he Court is under the impression that [Katherine] has no other purpose of doing so aside from forcing the Court to recuse." Judge Baker asserted that she could maintain impartiality and remain unbiased, but "the excessive false and disparaging social media posts made by [Katherine] would cause an objective observer to reasonably question the Court's impartiality[.]" Judge Baker concluded, "The actions of Katherine Diamond Ragland have been so outrageous and extreme that the Court fears for the safety of herself, her family, staff, and anyone else that [Katherine] perceives to be associated with the Court. The Court regrets the decision to recuse; however, [Katherine] has [. . .] left the Court with no other choice but to recuse to hopefully ensure the safety of the Court, her family, staff, and associates."

Following Judge Baker's recusal, the suit was re-allotted to Division C, whereupon Judge Charlene Day self-recused for similar reasons – namely, that Katherine has made distasteful and disparaging posts on social media about Judge Day and her "personal and professional affairs" on numerous occasions in May, July, and August 2023. This matter was then re-allotted to Judge Erika Green in Division B on September 18, 2023.

The proposed judgment from the four-day trial on Robert's rules for contempt was filed with the trial court on October 10, 2023. The following day, Judge Baker – who had already recused – erroneously signed the contempt judgment. Judge Baker's signature on the contempt judgment was subsequently crossed out due to this error.

The parties appeared before Judge Green on December 6, 2023, for judgment review, compliance review, and a status conference on the record,

whereupon Judge Green informed the parties that she was allowed by law to sign the contempt judgment to make it enforceable after reviewing the record. On the same date, Judge Green signed the contempt judgment pursuant to La. R.S. 13:4209.

On December 28, 2023, Katherine filed a motion for new trial in connection with the December 6, 2023 contempt judgment. A hearing on her motion for new trial was held on February 27, 2024, after which the trial court orally rendered judgment denying the motion for new trial. Katherine suspensively appealed the December 6, 2023 contempt judgment on March 18, 2024, prior to the signing of a written judgment denying her motion for new trial. A written judgment denying the motion for new trial was signed by the trial court on April 4, 2024, thus curing any prematurity of Katherine's appeal. See **Gober v. Gober**, 2020-0820 (La. App. 1 Cir. 3/11/21), 322 So.3d 787, 789 n.2. Robert answered the appeal on May 7, 2025.

**ASSIGNMENTS OF ERROR**

Katherine assigns the following as error:

A. The Trial Court erred and abused its discretion by signing the Judgment signed on October 11, 2023, creating the illusion of a valid judgment.

B. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for her posts on social media.

C. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for failing to pay the mortgage note on the former matrimonial domicile.

D. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for failing to make all items in the former matrimonial domicile accessible to [Robert] for inventory or for removing items from the matrimonial home.

E. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for having her mother, Betty Harris, present at the time [Robert] was scheduled to be at the matrimonial home.

9

F. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for removing a secretary desk from the former matrimonial home.

G. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for failing to provide photographs.

H. The Trial Court erred and abused its discretion by granting [Robert] authority to act without the concurrence of [Katherine] to list the matrimonial home for sale and to sell the home without the consent and/or concurrence of [Katherine].

I. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for failing to timely pay child support and failing to pay the retroactive arrearage balance.

J. The Trial Court erred and abused its discretion by denying [Katherine] the review of visitation.

K. The Trial Court erred and abused its discretion by holding [Katherine] in contempt of court for failing to issue payments of previously awarded attorney fees.

L. The Trial Court erred and abused its discretion by awarding [Robert] additional attorney fees in the amount of $53,500.00.

## STANDARD OF REVIEW

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record. La. C.C.P. art. 222. A constructive contempt of court is any contempt other than a direct one. La. C.C.P. art. 224. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is constructive contempt of court. See La. C.C.P. art. 224; **Schmidt v. Schmidt**, 2018-0202 (La. App. 1 Cir. 1/3/19), 270 So.3d 804, 809.

Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. **Donaldson v. Guidry**, 2021-1569 (La. App. 1 Cir. 7/8/22), 345 So.3d 433, 436, writ denied, 2022-01208 (La. 11/8/22),

10

362 So.3d 422. The decision to hold a party in contempt of court for disobeying the court's orders is within the trial court's great discretion. **Schmidt**, 270 So.3d at 809. Only if the appellate court finds an abuse of that discretion will a trial court's contempt ruling be reversed. **Id.** However, the predicate factual determinations underlying the finding of civil contempt of court are reviewed under the manifest error standard of review. **Donaldson**, 345 So.3d at 436-47. If the trial court's factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse those findings. **Id.** at 437. The issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. **Id.**

## DISCUSSION

### Assignment of Error A – October 11, 2023 Contempt Judgment and December 6, 2023 Contempt Judgment

Katherine argues that Judge Baker erred in signing the contempt judgment on October 11, 2023, and Judge Green erred in validating the contempt judgment by signing same on December 6, 2023. Katherine asserts that the October 11, 2023 contempt judgment was unenforceable and invalid because it was signed by Judge Baker after her recusal. She further asserts that Judge Green erred in signing the contempt judgment on December 6, 2023 without doing an independent review of the merits of Judge Baker's ruling "in light of Judge Baker's unprompted, self-recusal for bias." In response, Robert asserts that Katherine's attorney stipulated that the successor judge (Judge Green) could sign the contempt judgment in accordance with **Donahue v. Donahue**, 2016-1853 (La. 11/18/16), 206 So.3d 858 (per curiam); **Henry v. Sullivan**, 2016-1867 (La. 11/18/16), 206 So.3d 858 (per curiam); and **Benoit v. Benoit**, 2021-0864 (La. App. 1 Cir. 4/4/22), 341 So.3d 719, writ not considered, 2022-00951 (La. 10/4/22), 347 So.3d 890.

11

The Parties' Stipulations

A consent or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. See La. C.C. arts. 3071 and 3072; **M.P.W. v. L.P.W.**, 2013-0366 (La. App. 1 Cir. 11/1/13), 136 So.3d 37, 43. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court when it is not in derogation of law. **Cordon v. Parish Glass of St. Tammany, Inc.**, 2015-1078 (La. App. 1 Cir. 4/15/16), 195 So.3d 109, 112, writ denied, 2016-0896 (La. 9/6/16), 205 So.3d 918. Generally, there is no right to appeal a consent or stipulated judgment, because an appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him. La. C.C.P. art. 2085; **M.P.W.**, 136 So.3d at 44.

On October 24, 2023, Katherine filed a motion to vacate the October 11, 2023 contempt judgment as absolutely null, asserting that Judge Baker had no authority to sign the contempt judgment because she had already recused from the case. At the December 6, 2023 judgment review, compliance review, and status conference held on the record, the parties' attorneys and the trial court had the following exchange regarding Judge Green, as successor judge, signing the contempt judgment:

> **The Court:** [T]he law does allow me to look at the record and to sign and make it enforceable. [. . .] My position is that I can sign the judgment after reviewing the record. And I told you that I would do that. [. . .] But because you filed that motion [to vacate], I wasn't going to sign it prematurely until I - - because you filed the [motion to] vacate based on that, we have to put it on the record.
>
> **Ms. Katherine Benoit (one of Katherine's two attorneys present):** Correct. [. . .] My objection is that the judgment is absolutely null and can be taken and declared such as absolutely null by the court at any time when it was a direct violation of the - -
>
> **The Court:** That's your argument [. . .] for your motion to vacate.

12

**Ms. Benoit:** I wanted to preserve it for the record because again [. . .] we're just waiting until we had a valid signed judgment in order to have our motion for new trial filed, to have a motion for appeal filed, and to basically until we have a valid signed judgment. And I do understand what the court is saying that until it is declared absolutely null that - -

**The Court:** Unless you're telling me right now you want to pass to have your motion to vacate today.

**Ms. Benoit:** Um - - [. . .]

**Ms. Karen Downs (Robert's attorney):** Well, then will you stipulate that the successor judge can sign [the contempt judgment pursuant] to the Supreme Court [in] **Donohue versus Donohue** (sic) - - [. . .] And **Henry versus Sullivan**?

**Ms. Benoit:** And **Benoit versus Benoit**; 2021-CA-0864;[3]

**The Court:** So the answer is yes, - -

**Ms. Benoit:** Yes.

**The Court:** - - you're stipulating?

**Ms. Charlene Smith (the second of Katherine's two attorneys at this hearing):** We're stipulating.

Per this exchange, Katherine withdrew her motion to vacate the October 11, 2023 judgment and stipulated that the "successor judge" can sign a judgment in accordance with **Donahue**, 206 So.3d 858; **Henry**, 206 So.3d 858; and **Benoit**, 341 So.3d 719. However, Katherine argues on appeal that Judge Green is not a successor judge pursuant to La. R.S. 13:4209(B)(1). Because it is unclear from the transcript whether Katherine specifically stipulated to Judge Green being a "successor judge," we review this assignment of error.

<u>Validity of Judge Baker's October 11, 2023 Contempt Judgment</u>

Louisiana Code of Civil Procedure article 153(A) provides that a judge may recuse in any cause in which a ground for recusal exists, whether or not a motion for recusal has been filed by a party. Until a judge has recused herself, she has full

---

[3] Katherine Benoit was a self-represented litigant in **Benoit v. Benoit**, 2021-0864 (La. App. 1 Cir. 4/4/22), 341 So.3d 719, <u>writ not considered</u>, 2022-00951 (La. 10/4/22), 347 So.3d 890.

power and authority to act in the cause. **Revere v. Strain**, 2002-0254 (La. App. 1 Cir. 12/31/02), 837 So.2d 137, 138. However, the power and authority for her to act as judge in a particular case for any and all reasons ceases at the moment of recusal. **Revere**, 837 So.2d at 138. Once a judge is recused, she has no power to act and any action taken by a recused judge is an absolute nullity. **Marts v. Khan**, 22-20 (La. App. 5 Cir. 6/15/22), 344 So.3d 224, 225, citing **State v. Price**, 274 So.2d 194, 197 (La. 1973).

Judge Baker's recusal is dated September 18, 2023. She subsequently signed the contempt judgment on October 11, 2023. Thus, the October 11, 2023 contempt judgment is an absolute nullity. See **Marts**, 344 So.3d at 225.

<u>Validity of Judge Green's December 6, 2023 Contempt Judgment</u>

After the parties' exchange on the record on December 6, 2023, Judge Baker's signature on the October 11, 2023 contempt judgment was crossed through with a note indicating that it was signed in error. Judge Green then signed the contempt judgment and indicated on the face of the judgment that she was signing in accordance with La. R.S. 13:4209, which governs decisions by a successor judge.

Louisiana Revised Statutes 13:4209(B) states:

> (1) In cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment dies, resigns, or is removed from office, or if his term expires before signing judgment in the case, his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered.
>
> (2) **If a prior judge has stated an affirmative intent to sign a judgment and failed to do so for whatever reason, the successor judge is empowered to sign the judgment.** (Emphasis added.)

Although La. R.S. 13:4209(B) does not explicitly refer to judges who "recuse," the Supreme Court of Louisiana in **Donahue** and **Henry** established that "[i]f a prior judge has stated an affirmative intent to sign a judgment and failed to do so **for**

**whatever reason**, the successor judge is empowered to sign the judgment." **Donahue**, 206 So.3d 858; **Henry**, 206 So.3d 858.

Judge Baker, who presided over this matter until her September 18, 2023 recusal, issued thorough reasons for judgment, ordered Robert's attorney to prepare a judgment reflecting her orders and circulate the judgment to Katherine's attorney, and ordered Katherine's attorney to file the judgment no later than October 3, 2023. Judge Baker's actions clearly evidence an affirmative intent to sign the contempt judgment. See **Benoit**, 341 So.3d at 729-30. We conclude that Judge Green, in her capacity as successor judge, was empowered to sign the written judgment reflecting Judge Baker's reasons for judgment pursuant to La. R.S. 13:4209(B)(2). Any other result would be contrary to the statutory intent as well as the interests of judicial economy. **Henry**, 206 So.3d 858. This assignment of error lacks merit.

## Assignment of Error B – Contempt for Social Media Posts

Katherine argues that the trial court erred and abused its discretion by holding her in contempt of court for her social media posts. In the July 16, 2019 stipulated judgment, the parties stipulated that, "The parties shall not make posts on social media or publicly about the custody matters or about the other parent and/or his/her family." The July 16, 2019 stipulated judgment was based upon a five-page written stipulation, which both parties signed on every page on May 13, 2019.

Also on May 13, 2019, the parties' attorneys read several additional stipulations into the record before the trial court, which were combined with the five-page written stipulation to create the July 16, 2019 stipulated judgment. At that time, the trial court asked Katherine on the record whether she had an opportunity to review and sign the five-page written stipulation, to which she responded that she understood and agreed to the written stipulation. After

15

confirming that Robert reviewed, understood, and agreed to the written stipulation, the trial court rendered judgment in accordance with the stipulation of the parties.

In his first rule for contempt, Robert alleged that Katherine violated the July 16, 2019 stipulated judgment by making numerous social media posts about the ongoing custody matters. The trial court ultimately found Katherine in contempt for violating the July 16, 2019 stipulated judgment.

At trial, Katherine was questioned about a number of social media posts.[4] Although Robert's attorney limited her questioning to posts occurring between May 13, 2019 and June 16, 2020, Robert testified that more posts were made after the filing of his first rule for contempt.

Katherine described one of her social media posts as "Luke Skywalker and Princess Leia with Darth Vader," to which she added a caption stating, "Happy Father's Day!!! The twins and their evil dad." Katherine alleged that she did not remember making the post but apologized for making it. Robert later testified that the Darth Vader post was disappointing, frustrating, and making a spectacle of the children's lives.

Katherine described another social media post as "a discussion about parental alienation." She alleged that she is an advocate for families and was posting "in a more general manner," rather than posting about her own custody proceedings. Katherine also admitted to making a Facebook post wherein she

---

[4] Katherine's social media posts are not in the appellate record. An appellate court must render any judgment which is just, legal, and proper upon the record on appeal, which includes the pleadings, court minutes, transcripts, jury instructions (if applicable), judgments, and other rulings, unless otherwise designated. La. C.C.P. arts. 2164, 2127, 2128; see also Official Revision Comment (d) for La. Code Civ. P. art. 2127; **Niemann v. Crosby Development Company**, 2011-1337 (La. App. 1 Cir. 5/3/12), 92 So.3d 1039, 1044. Katherine, as the appellant, is charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to her. **Niemann**, 92 So.3d at 1044.

Although Katherine's social media posts are discussed at length in Judge Baker's written reasons, the trial court's oral or written reasons for judgment form no part of the judgment, and appellate courts review judgments, not reasons for judgment. **Wooley v. Lucksinger**, 2009-0571 (La. 4/1/11), 61 So.3d 507, 572. Nonetheless, the court of appeal is entitled to use those written reasons to gain insight into the trial court's judgment. **Wooley**, 61 So.3d at 572. Accordingly, we review the parties' testimony regarding the social media posts and refer to the trial court's written reasons as needed to gain insight into the ruling.

claimed that she has no maternal rights and that a lack of justice is everyone's problem that some experience more directly than others. Katherine denied that this post was about her own custody matter, alleging that "it's not just mine [. . .] it's lots of people's."

Katherine further admitted to posting a picture of a crying person with the following statement: "Today after school, my kids will be cared for by a 19-year old babysitter. Almost every day I request [to care for the children,] and [I'm] always denied. I just found out last night, my daughter was taken to a doctor earlier today, I had no clue. My heart is completely heartbroken, heart full of love." Katherine again alleged that she did not remember making this post. Robert read another of Katherine's social media posts into the record, which stated, "So wish I could tell my children good morning. If I call right now, I will be in contempt of court."

Despite the social media posts detailed above, Katherine asserted that she "really tried to follow" the July 16, 2019 stipulated judgment. However, she also claimed that she was coerced into stipulating that she would not make social media posts about the ongoing custody case. Katherine further testified that she did not think her posts would lead to Robert or the children receiving negative attention, nor did she think it was damaging to the children to have people discussing her posts about the ongoing situation.

Robert described Katherine's social media posts as a "routine occurrence" and alleged that the posts were public, rather than limited to a smaller audience. He alleged that strangers had contacted him on Facebook asking him about the custody case. Robert testified that he felt his safety was compromised by the posts, which "were continuing, and the people commenting were growing increasingly hostile, and these are not people I knew." He further stated, "I didn't know if I might encounter one of these people. I didn't know if one of these people might

target me. I didn't know if one of these people might think it was their place to rescue the children, or save the children, or intervene on the children's behalf, because these posts are [. . .] pretty emphatic." Robert further testified that the parties' children had seen some of the posts and that he observed their reactions to be "disappointment [and] fear."

Katherine's social media posts clearly violate the July 16, 2019 stipulated judgment, wherein the parties agreed not to make posts on social media or publicly about the custody matters. Katherine's claims that she does not remember making the social media posts are not persuasive. Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court is constructive contempt of court. See La. C.C.P. art. 224; **Schmidt**, 270 So.3d at 809. We find no abuse of discretion in the trial court's determination that Katherine was in contempt for repeatedly making social media posts about the custody matters in violation of the July 16, 2019 stipulated judgment. See **Schmidt**, 270 So.3d at 809.

Katherine further appeals the punishment for this contempt finding, arguing that the punishment was exorbitant.[5] She was sentenced to serve twenty days in parish prison, which was suspended conditioned upon Katherine's compliance with the judgment. Katherine was further ordered to perform twenty-four hours of community service in the form of litter abatement within one month of the contempt judgment.

Punishments for contempt of court are governed by La. R.S. 13:4611. See also La. C.C.P. art. 227. Louisiana Revised Statutes 13:4611 provides in pertinent part:

---

[5] Katherine was also found in contempt for violating a permanent injunction enjoining her from harassing Robert. The trial court imposed punishment for this contempt contemporaneously with its finding of Katherine being in contempt for making social media posts about the custody matters. Katherine has not appealed the finding of contempt for harassment.

Except as otherwise provided for by law:

(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:

(a) For a direct contempt of court committed by an attorney at law, by a fine of not more than one hundred dollars, or by imprisonment for not more than twenty-four hours, or both; and, for any subsequent contempt of the same court by the same offender, by a fine of not more than two hundred dollars, or by imprisonment for not more than ten days, or both;

(b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than six months, or both.

(c) For a deliberate refusal to perform an act which is yet within the power of the offender to perform, by imprisonment until he performs the act; and

(d)(i) **For any other contempt of court,** including disobeying an order for the payment of child support or spousal support or an order for the right of custody or visitation, **by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.**

(ii) **In addition to or in lieu of the penalties provided by this Paragraph, the court may order that the person perform litter abatement work or community service in a court-approved program for each day he was to be imprisoned,** provided that the total days of jail, litter abatement work, and community service do not exceed the maximum sentence provided by this Paragraph. (Emphasis added.)

Katherine's punishment for constructive contempt of court was in accordance with the provisions of La. R.S. 13:4611, and within the trial court's discretion. <u>See</u> **Evans v. Evans**, 2017-0627 (La. App. 4 Cir. 5/16/18), 247 So.3d 120, 128. This assignment of error lacks merit.

## <u>Assignment of Error C – Contempt for Failing to Pay the Mortgage Note</u>

Katherine argues that the trial court erred by holding her in contempt of court for failing to pay the mortgage note on the family home. Relevantly, Katherine was granted exclusive use of the family home in the October 5, 2017 stipulated judgment, wherein she agreed to pay the mortgage note, property taxes,

19

and home insurance on the family home, while waiving her right for reimbursement for same. In return, Robert waived his right to seek rental reimbursement for Katherine's use of the home.

In his second rule for contempt, Robert alleged that Katherine had failed to pay the monthly mortgage note in violation of the October 5, 2017 stipulated judgment. Following trial on the matter, the trial court found Katherine in contempt for her nonpayment of the mortgage note. The trial court further found that the parties' mortgage had a deferred principal balance of $39,547.02, which accrued as a result of Katherine's nonpayment of the mortgage, and determined that balance to be Katherine's sole, separate debt.

Katherine admitted at trial that she stopped paying the mortgage note during the COVID-19 pandemic. She alleged that she had obtained a forbearance, but provided no evidence of the mortgage company authorizing any pause in payments. Katherine testified that she did not obtain Robert's consent or the trial court's permission before she ceased payment, nor was she aware of any exceptions in the October 5, 2017 stipulated judgment that would allow her to obtain a forbearance.[6] Katherine admitted to receiving notice of the default of the mortgage, alleging that she called and "worked it out with the bank." She further admitted that the mortgage has an outstanding deferred principal balance of $39,547.02, as a result of her nonpayment of the mortgage note. Because willful disobedience of any lawful judgment is constructive contempt of court, we find that the trial court did not abuse its discretion when it found Katherine in contempt for failing to pay the mortgage note in violation of the October 5, 2017 stipulated judgment. See La. C.C.P. art. 224; **Schmidt**, 270 So.3d at 809.

---

[6] Katherine later acknowledged that she had $57,994.00 in her checking account as of November 2021. When questioned about these funds, Katherine testified, "I didn't know what exactly was going to happen with the house and everything. Like, I just wanted to be really careful not to - - you know, have any insurmountable problems. COVID had me really scared." Despite these concerns, Katherine's unilateral failure to pay the mortgage note resulted in a substantial deferred balance in the amount of $39,547.02.

Katherine further argues that the trial court erred by making her solely responsible for the deferred principal balance of $39,547.02, alleging that this ruling exceeds the provisions of La. R.S. 13:4611, which governs punishments for contempt. However, the classification of the deferred balance as Katherine's sole, separate debt was not punishment for contempt. Her punishment for this contempt was ten days in parish prison, which was suspended conditioned upon her compliance with the judgment, and sixteen hours of community service in the form of litter abatement within two months of the contempt judgment. This punishment was in accordance with the provisions of La. R.S. 13:4611, and within the trial court's discretion. See **Evans**, 247 So.3d at 128.

Conversely, the trial court's assessment of the deferred principal balance of $39,547.02 as Katherine's separate debt is a classification of a new debt solely caused by Katherine's nonpayment of the mortgage note in violation of the October 5, 2017 stipulated judgment. The trial court's determination that the deferred principal balance of $39,547.02 is Katherine's sole, separate debt aligns with La. C.C. art. 2369.3, which provides:

> A spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect.

The trial court's determination as to the merit of the claim of mismanagement of community assets is subject to the manifest error standard of review. **Bueche v. Bueche**, 2023-0656 (La. App. 1 Cir. 3/5/24), 2024 WL 930487 (unreported) at *2.

Pursuant to La. C.C. art. 2369.3, Katherine clearly breached her duty to preserve and prudently manage former community property under her control by failing to pay the mortgage note. Although Robert did not explicitly plead or argue mismanagement of community property pursuant to La. C.C. art. 2369.3 in connection with the mortgage note, we find that the issue of mismanagement was

properly before the court since Katherine was previously ordered by the trial court to pay the note, the trial court found Katherine in contempt for her failure to pay the note, and Katherine testified that she did not pay the note. See **Bueche**, 2024 WL 930487 at *2 (affirming a trial court's finding that a husband who failed to pay his vehicle note in violation of a prior judgment was solely responsible for the balance owed from the subsequent repossession of the vehicle). Thus, we find no manifest error in the judgment of the trial court finding Katherine solely responsible for the deferred principal balance in the amount of $39,547.02. This assignment of error lacks merit.

## Assignment of Error D – Contempt for Failure to Make All Items in the Family Home Accessible for Inventory

Katherine argues that the trial court abused its discretion by holding her in contempt of court for failing to make all items in the family home accessible to Robert for inventory or for removing items from the matrimonial home. Relevantly, on March 23, 2020, the trial court authorized Robert to enter the family home for the purposes of preparing an inventory of the household items, specifically ordering the following:

> **IT IS ORDERED, ADJUDGED AND DECREED** that **ROBERT JAMES RAGLAND**, a party of his choosing and a Baton Rouge City Police Officer, Baton Rouge City Constable, East Baton Rouge Parish Sheriff's deputy, and/or a Louisiana State Trooper may accompany **ROBERT JAMES RAGLAND** to the former matrimonial domicile for purposes of his preparing an inventory of the movables and household items at the former matrimonial domicile [. . .] and/or on the property on which it is situated. **ROBERT JAMES RAGLAND** shall also be permitted to photograph and/or video the items in addition to making a list of same. The inventory shall take place at 9:00 a.m. on March 26, 2020, at [the family home.]

The inventory was subsequently rescheduled to August 20, 2020 at Katherine's request. In his second rule for contempt, Robert alleged that he was unable to

22

complete the inventory on August 20, 2020, because Katherine had removed certain items from the family home and made other items inaccessible.[7]

At trial, Robert averred that when he arrived at the family home on August 20, 2020, two pieces of furniture – a secretary desk and a buffet – were locked such that he could not open them or examine the contents within. He further testified that the items listed in his second rule for contempt were missing from the family home when he attempted to conduct the inventory. The trial court subsequently found Katherine in contempt for failing to make all items in the family home accessible to Robert for inventory and by removing certain items from the family home.

Katherine argues on appeal that whether Robert "had access to see the actual item does not necessitate" her being held in contempt of court. She asserts that "typical community property litigation would simply allow [Robert] to assert value for the lost item wherein he is entitled to a reimbursement claim." She further argues that Robert "may be entitled to an additional reimbursement claim for [having] to hire an expert to determine the value" of the missing property, but Robert is not entitled to the remedy provided by the court. These arguments disregard the fact that Katherine willfully violated the March 23, 2020 judgment by removing items from the home and making the items within the secretary desk and buffet inaccessible to Robert. We find no abuse of discretion in the trial court's finding of Katherine to be in contempt for these actions. See **Schmidt**, 270 So.3d at 809.

Katherine further argues that her punishment for this contempt was "extreme." She was sentenced to serve ten days in parish prison, which was suspended conditioned upon her compliance with the judgment, and sixteen hours

---

[7] In his second rule for contempt, Robert listed approximately thirty items as missing from the family home and identified the room in which each item was previously located. The list included lamps, books, furniture, silver pieces, porcelain pieces, several lithographs, and other pieces of artwork and decorative items.

of community service in the form of litter abatement two months of the rendition of the contempt judgment. This punishment is in accordance with the provisions of La. R.S. 13:4611, and within the trial court's discretion. See **Evans**, 247 So.3d at 128. This assignment of error lacks merit.

**Assignment of Error E – Contempt for Ms. Harris Being Present at the Inventory Scheduled for February 10, 2022**

Katherine argues that the trial court erred by holding her in contempt of court for having her mother, Ms. Harris, present at the family home on February 10, 2022. At the January 18, 2022 hearing, the parties stipulated that Robert could complete his inventory of the parties' household items on February 10, 2022, between the hours of 10:30 a.m. and 2:00 p.m., under the following relevant conditions: (1) Robert would be allowed to remove certain separate property from the home; and (2) neither Katherine nor her mother, Ms. Harris, who lives in the family home, shall be present during that time frame. These stipulations were memorialized in a judgment signed on February 22, 2022.

In his third rule for contempt, Robert alleged that Katherine violated the trial court's January 18, 2022 order by allowing Ms. Harris to be present at the family home on February 10, 2022, despite the trial court intentionally scheduling the inventory on a date and time that Ms. Harris was supposed to be away from the home attending a day program. The trial court ultimately found Katherine in contempt for allowing Ms. Harris to be present.

At trial, Katherine admitted that Ms. Harris was in the home during the relevant time frame. Katherine alleged that Ms. Harris was supposed to attend a "day program" that day but was sick, so she left Ms. Harris at the family home instead. These actions violate the parties' stipulation that Ms. Harris not be present at the family home during the hours of 10:30 a.m. to 2:00 p.m. on February 10, 2022. Willful disobedience of any lawful judgment or order is constructive

contempt of court.  See La. C.C.P. art. 224; **Schmidt**, 270 So.3d at 809.  We therefore find no abuse of discretion in the trial court's determination that Katherine was in contempt for allowing Ms. Harris to be present in violation of the trial court's January 18, 2022 order.  See **Schmidt**, 270 So.3d at 809.  This assignment of error lacks merit.

## Assignment of Error F – Contempt for Removing the Secretary Desk From the Family Home Prior to the February 10, 2022 Inventory

Katherine argues that the trial court erred and abused its discretion by holding her in contempt of court for removing the secretary desk from the family home.  At the January 18, 2022 hearing, in addition to the stipulations above, Katherine stipulated that she would unlock the buffet for inventory purposes and allow Robert to inventory the contents of the secretary desk.

In his third rule for contempt, Robert alleged that Katherine removed the secretary desk from the family home, thereby prohibiting him from completing the inventory.  He testified at trial that when he arrived at the family home to complete the inventory, he learned from Katherine's attorney that Katherine had removed the secretary desk from the family home and relocated it to New Orleans.  He further testified that he was not allowed entry into the home.  The trial court subsequently found Katherine in contempt for removing the secretary desk from the home.

Katherine argues that the trial court erred in holding her in contempt for an issue similar to one already ruled upon in the same contempt proceedings.  However, the secretary desk is involved in at least two separate contempt issues.  First, Katherine violated the March 23, 2020 stipulated judgment by making certain items, which were inside the secretary desk and buffet, inaccessible.  Second, Katherine violated the trial court's January 18, 2022 order that Robert be permitted to inventory the contents of the secretary desk by removing the secretary

25

desk from the family home prior to the rescheduled inventory. Katherine was found in contempt on two occasions because she willfully violated two separate orders. We therefore find no abuse of discretion in the trial court's finding of Katherine to be in contempt for her removal of the secretary desk in violation of the trial court's January 18, 2022 order. See **Schmidt**, 270 So.3d at 809.

Katherine further argues that the punishment for contempt was excessive and an abuse of the trial court's discretion. She was sentenced to serve ten days in parish prison, which was suspended conditioned upon her compliance with the judgment, and sixteen hours of community service in the form of litter abatement within five months of the date of rendition of the contempt judgment. This sentence is in accordance with the provisions of La. R.S. 13:4611, and within the trial court's discretion. See **Evans**, 247 So.3d at 128. This assignment of error lacks merit.

**Assignment of Error G – Contempt for Failure to Provide Photographs of Items Missing from the Family Home**

Katherine argues that the trial court erred and abused its discretion by holding her in contempt of court for failing to provide photographs of the items listed as missing by Robert. At the same January 18, 2022 hearing involved in Assignments of Error E and F, Katherine stipulated that she would take pictures of each and every item listed as missing in Robert's second rule for contempt. She further agreed that, for any item that does not exist, she would answer in writing and under oath whether the item does not exist, never existed, or did exist. For those items that did exist, Katherine was to explain what happened to the item.

On February 25, 2022, Katherine provided to Robert eleven photographs in connection with the trial court's January 18, 2022 order. In his third rule for contempt, Robert alleged that Katherine violated trial court's order by failing to provide photographs of "each and every item" listed in his second rule for

contempt. The trial court ultimately found Katherine in contempt for failing to provide photographs or sworn explanations for all of the listed items.

Although Katherine provided eleven photographs to Robert, the second rule for contempt identifies approximately thirty items as missing and provides the room in which most of those items were previously kept. When asked why she did not photograph every item that had been removed from the family home as ordered by the trial court, Katherine testified that she photographed what she could and that "a lot of those items have been photographed already." Katherine was then asked by Robert's attorney where her written statement made under oath was, to which she responded, "I don't know." Robert asserts that as of the time of this appeal, Katherine still has not provided the photographs and/or statements ordered by the court.[8]

Willful disobedience of any lawful judgment is constructive contempt of court. See La. C.C.P. art. 224; **Schmidt**, 270 So.3d at 809. We find no abuse of discretion in the trial court's determination that Katherine was in contempt for failing to provide photographs of the items missing from the family home and further failing to provide a statement in writing and under oath explaining the missing items. See **Schmidt**, 270 So.3d at 809.

Katherine also argues that the punishment for this finding of contempt was excessive. She was sentenced to serve ten days in parish prison, which was suspended conditioned upon her compliance with the judgment, and sixteen hours of community service in the form of litter abatement within five months of the rendition of the contempt judgment. This punishment is in accordance with the

---

[8] The record contains a document entitled "List of Community Property," wherein Katherine addressed the missing items, alleging that she did not know what Robert was "talking about" in response to some of the missing items and further alleging that some of the missing items belonged to her mother. It is unclear whether Katherine ever provided this list to Robert or his attorney. Regardless, this unsigned document is not a sworn statement under oath and is thus insufficient.

provisions of La. R.S. 13:4611, and within the trial court's discretion. See **Evans**, 247 So.3d at 128. This assignment of error lacks merit.

**Assignment of Error H – Trial Court's Granting of Authority to Robert to Act Without Katherine's Concurrence to List the Family Home for Sale and Sell the Home**

Katherine argues that the trial court erred and abused its discretion by granting Robert authority to list the family home for sale and sell the home without Katherine's consent. Relevantly, Robert requested authority to list the family home for sale without Katherine's concurrence in his second rule for contempt, averring that "based upon [Katherine's] refusal to sell the [family] home thus far and her history of acting irrationally and/or hostile in the past," he has reason to believe that Katherine will not cooperate in listing the family home for sale. The trial court ultimately granted authority to Robert to list for sale and sell the family home without Katherine's concurrence.

Louisiana Civil Code article 2369.7, concerning the court's authorization for a spouse to act alone, provides:

> A spouse may be authorized by the court in a summary proceeding to act without the concurrence of the other spouse, upon showing all of the following:
>
> (1) The action is necessary.
>
> (2) The action is in the best interest of the petitioning spouse and not detrimental to the interest of the nonconcurring spouse.
>
> (3) The other spouse is an absent person or arbitrarily refuses to concur, or is unable to concur due to physical incapacity, mental incompetence, commitment, imprisonment, or temporary absence.

The granting of Robert's request in accordance with the elements of La. C.C. art. 2369.7 is a factual determination made by the trial court subject to the manifest error standard of review. See **Anding v. Anding**, 32,084 (La. App. 2 Cir. 8/18/99), 740 So.2d 253, 259 (finding that the granting of a spouse's claim for reimbursement was a factual determination and applying the manifest error

28

standard of review); **Cloud v. Cloud**, 54,072 (La. App. 2 Cir. 9/22/21), 327 So.3d 1059, 1064 ("The trial court's determination as to the merit of the claim of mismanagement of community assets is subject to the manifest error standard of review"); **Age v. Age**, 2018-0179 (La. App. 4 Cir. 12/12/18), 262 So.3d 290, 293 ("A trial court's rulings regarding the partitioning of community property are reviewed under the 'manifest error' standard, granting great discretion to the trial court").

Robert described the family home as an older home that needs continual maintenance. He observed the home to be falling into disrepair on the occasions he went to the home to conduct the inventory. He further testified that Katherine was in default in the amount of $59,044.07 as of September 15, 2022 due to her failure to pay the monthly mortgage note. Robert testified that Katherine's failure to pay the mortgage note has caused him tremendous concern and resulted in a considerable drop in his credit score.[9] He testified that he has received multiple unsolicited offers to purchase the family home and communicated those offers to Katherine, but she did not accept.

Katherine objected to Robert being granted sole authority to sell the family home, averring that her "mother's interest should be taken into consideration with the house." She testified that Ms. Harris currently lives in the family home and "contributes" to the mortgage note. However, Ms. Harris has no ownership interest in the family home. On the contrary, Katherine purchased the home and later donated one-half of the home to Robert. Katherine further testified that the amount of time she herself stays at the family home "varies," explaining that she spent two nights at the family home and five nights in New Orleans the week prior

---

[9] Robert testified that there is a second mortgage on the home, executed on May 2, 2016, wherein Robert's father loaned $100,000.00 to Robert and Katherine. Robert estimated that approximately $90,000.00 was still owed to his father for the second mortgage. Robert asserts in his appellate brief that the total outstanding balance of both mortgages at the time of trial was $329,460.82.

to the contempt trial. She testified that she stays at her office in New Orleans whenever it is expedient to do so. When asked whether she recalled any external offers to purchase the home, Katherine averred that she did not remember any offers and was not interested in selling the house.

The trial court concluded that there was relatively no chance that the parties could effectively jointly list and sell the family home due to Katherine's repeated uncooperative behavior. Noting that neither party could afford to purchase the interest of the other, the trial court determined that Katherine's nonpayment of the mortgage note and her failure to maintain the family home establish that the sale of the home is necessary. The trial court opined that the family home will continue to deteriorate, and the value will continue to drop, for as long as the sale is delayed. Accordingly, the trial court found that Robert proved each requirement of La. C.C. art. 2369.7: (1) the action is necessary; (2) the action is in the best interest of Robert and not detrimental to the interest of Katherine; and (3) Katherine arbitrarily refuses to concur. Considering the testimony of the parties, we find no manifest error in the trial court's finding that Robert proved the elements of La. C.C. art. 2369.7. This assignment of error lacks merit.

**Assignment of Error I – Contempt for Failure to Timely Pay Child Support**

Katherine argues that the trial court erred and abused its discretion by holding Katherine in contempt of court for failing to timely pay child support and failing to pay the retroactive arrearage balance without taking into consideration her unemployment and inability to remain employed.

In a judgment rendered on September 9, 2020, and signed on September 22, 2020, Katherine was ordered to pay child support to Robert in the amount of $631.50 per month as direct support, plus 50% of the children's health insurance premiums ($168.81 per month). The trial court ordered that the current support award would be payable in two monthly installments in the amount of $400.15,

30

payable on the 1ˢᵗ and 15ᵗʰ day of each month, commencing September 15, 2020. The trial court further ordered Katherine to pay an additional $200.00 per month commencing September 15, 2020 until the retroactive arrearages are paid.

Robert's third rule for contempt included a rule for arrearages, wherein Robert alleged that Katherine owed $9,811.22 in past due child support. Following trial, the trial court found Katherine in contempt for failing to timely pay child support and the retroactive arrearage balance.

Robert testified at the contempt trial that Katherine has not paid child support timely on a regular basis since December of 2021. He further testified that she owed $9,811.33 in child support as of June 20, 2022.

Katherine testified that she became confused about the payment of child support after the trial court granted the February 3, 2022 protective order. When asked about the September 22, 2020 judgment that ordered her to pay child support, Katherine alleged that she did not have that judgment in her possession. Katherine further alleged that "if someone would have brought it to [her] attention earlier, [she] would have addressed it earlier." She subsequently testified that she "wants to clear up" anything she owes.

Katherine argues that the trial court erred by failing to consider that she was unemployed and unable to remain employed. Her argument is contradicted by her own testimony at trial, at which she testified that she has a bachelor's degree in architecture from LSU and works in New Orleans as an architect. Katherine testified that all she does "is work, pretty much," and averred that she was working on some different apartment renovation projects at the time of trial. She further testified that she paid $1,500.00 per month to rent an office on Josephine Street in New Orleans and explained that she is able to pay the rent because she works "very hard."

Considering Katherine's testimony about her employment as an architect, we conclude that there is no basis in the record to support Katherine's assertion that she is unemployed or unable to pay child support. This assignment of error lacks merit.

**Assignment of Error J – Denial of Review of Visitation**

Katherine argues that the trial court erred and abused its discretion by denying Katherine the review of visitation. The September 26, 2022 judgment contains the following pertinent orders, which were based upon the parties' stipulations on the record in open court on September 13, 2022:[10]

> **IT IS ORDERED, ADJUDGED AND DECREED** that **KATHERINE DIAMOND** shall enroll in and participate in the In-Person Domestic Violence Offender Program conducted by [Dr.] Christopher C. Velardo within the next week. [. . .]

> **IT IS ORDERED, ADJUDGED AND DECREED** that **ROBERT JAMES RAGLAND** is granted the sole care, custody and control of the minor children[.]

> **IT IS ORDERED, ADJUDGED AND DECREED** that **KATHERINE DIAMOND** shall have visitation with the minor children in accordance with the February 3, 2022 Protective Order once she is enrolled in and participating in the Domestic Violence Offender Program referenced above, and the Director of the Program issues a report that she is compliant with the Program. Upon the commencement of the supervised visitation as set forth in the February 3, 2022 Protective Order, Lori Heroman, MA, LPC, shall provide the supervision for the visits which shall occur at her office. [. . .]

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that **KATHERINE DIAMOND's** visitation with the minor children shall be subject to further discussion between the parties, through counsel, with the prospect of increasing visitation as **KATHERINE DIAMOND** demonstrates progress in the Domestic Violence Program.

Each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount consideration being the best interest of the child. La. C.C. art. 131; **Tumminello v. Clark**, 2022-0929 (La. App. 1 Cir.

---

[10] The September 13, 2022 transcript is not in the appellant record. Katherine, as the appellant, is charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to her. **Niemann**, 92 So.3d at 1044.

12/29/22), 360 So.3d 880, 885. The trial court is in the best position to ascertain the best interest of the child given the unique circumstances of the particular case; thus, the trial court's custody determination is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. **Tuminello**, 360 So.3d at 885.

On March 24, 2023, during the contempt trial, Katherine presented a letter from Dr. Velardo, dated November 22, 2022, which stated, "Katherine Diamond enrolled in the domestic violence offender program on September 20, 2022, and has participated in five classes that have been held since then."[11] Dr. Velardo's letter did not indicate whether Katherine was compliant with the program. Katherine testified that she did not have any other reports from Dr. Velardo, but stated that she "could ask him for a new one." She further estimated that she had attended thirteen weeks of the course thus far, but provided no evidence in support of this assertion.

Dr. Velardo's letter is insufficient to show compliance with the in-person domestic violence offender program. His letter merely indicates that Katherine attended five classes between September 20, 2022 and November 22, 2022. Without evidence demonstrating actual compliance with the program, we find no abuse of discretion in the trial court's determination that Katherine failed to set forth grounds for a review of visitation. See **Tuminello**, 360 So.3d at 885. This assignment of error lacks merit.

### Assignment of Error K – Contempt of Court for Failing to Issue Payments of Previously Awarded Attorney's Fees

Katherine argues that the trial court erred in holding her in contempt for failing to issue payments of previously awarded attorney's fees in the amount of $3,000.00 as ordered in the judgment rendered on January 21, 2020 and signed on

---

[11] Dr. Velardo's November 22, 2022 letter is not in the appellate record, but was read aloud by Katherine during the contempt trial.

June 8, 2020. Relevantly, on December 20, 2019, Robert filed a motion to compel Katherine to provide complete responses to discovery. In the June 8, 2020 judgment, the trial court granted Robert's motion to compel, ordered Katherine to supplement her discovery responses in accordance with the judgment, and ordered Katherine to pay attorney's fees in the amount of $3,000.00, plus costs.

In his first rule for contempt, Robert averred that Katherine had only made one payment of $100.00 towards the attorney's fees and court costs owed. Robert asserted that there had been no good faith effort and/or significant payment towards the attorney's fees owed and asked that Katherine be held in contempt of court for her failure to make payment.

Louisiana Code of Civil Procedure article 1469(4) authorizes a motion for an order compelling discovery and, if the motion is granted, Article 1469 authorizes the trial court to award attorney fees and reasonable expenses incurred in obtaining the order. **Smith v. Dirt Cheap of Louisiana, LLC**, 2023-0808 (La. App. 1 Cir. 3/22/24), 387 So.3d 662, 666-67.

The trial court ultimately concluded that Katherine failed to present any evidence to contradict Robert's assertion that Katherine still owed $2,900.00 of the $3,000.00 awarded in attorney's fees. Accordingly, the trial court found Katherine in contempt for her failure to pay the remaining balance of the attorney's fees and court costs as ordered.

Katherine argues on appeal that the parties agreed in the September 13, 2022 stipulated judgment to "continue discussions regarding a payment plan for the remainder of monies due and owing by [Katherine] to [Robert]." She asserts that she cannot be held in contempt when the parties have not completed the details of the payment plan for her to issue payments towards the attorney's fees. However, an order to continue discussions relating to a payment plan does not equate to the parties' actually reaching a stipulation regarding a payment plan. Louisiana

34

jurisprudence has recognized that "an agreement to agree is no agreement at all, since either party may avoid it by the mere failure to agree." **NOLA Title Co., L.L.C. v. Archon Information Systems, LLC**, 2022-0697 (La. App. 4 Cir. 4/13/23), 360 So.3d 166, 178, writ denied, 2023-00682 (La. 9/19/23), 370 So.3d 467, citing **McNeely v. Town of Vidalia**, 157 La. 338, 342, 102 So. 422, 423 (1924). Without an agreement to that effect, there is no established payment plan that the parties must follow.

Katherine further argues that La. R.S. 13:4206 prohibits the court from construing nonpayment as contempt. Louisiana Revised Statutes 13:4206 provides:

> Failure to obey an order or judgment of court, when such order or judgment is in effect an order or judgment for the payment of money, shall not be construed as a contempt, if it appears that the failure to obey is due to inability to comply with the order or judgment which inability existed when the order or judgment was rendered.

At trial, Katherine did not assert that she was unable to comply with the June 8, 2020 judgment. Instead, she claimed that she did not know what she had paid to Robert. Katherine further alleged that she could not remember being provided copies of the June 8, 2020 judgment, nor could she remember being told that she had to pay attorney's fees in the amount of $3,000.00 for the trial court's grant of the motion to compel. Nevertheless, Katherine admitted that she was in court when the motion to compel was heard in January of 2020.

Considering the foregoing, we find no abuse of discretion in the trial court's finding that Katherine was in contempt for failing to pay the remaining balance of $2,900.00 in attorney's fees as ordered in the June 8, 2020 judgment. See **Schmidt**, 270 So.3d at 809. This assignment of error lacks merit.

**Assignment of Error L – Award of Additional Attorney's Fees**

Katherine argues that the trial court erred by awarding to Robert additional attorney's fees in the amount of $53,500.00. Relevantly, the trial court ordered

Katherine to pay to Robert attorney's fees totaling $53,500.00 for the filing of the first, second, and third rules for contempt. The $53,500.00 attorney's fees award consists of $20,000.00 in attorney's fees for the filing of the first rule for contempt, $11,500.00 for the filing of the second rule for contempt, and $22,000.00 for the filing of the third rule for arrearages and contempt.

Courts are only authorized to award attorney's fees "to the prevailing party" to "punish a person adjudged guilty of a contempt of court." The term "prevailing party" means a party who succeeds in establishing that contempt of court has occurred. Under La. R.S. 13:4611(1)(g), the Legislature chose to authorize awards of attorney's fees under this statute only to a party who successfully prosecutes a rule for contempt. **D'Amico v. Burnthorne**, 23-80 (La. App. 5 Cir. 12/6/23), 378 So.3d 174, 189, <u>writ denied</u>, 2024-00034 (La. 2/27/24), 379 So.3d 1268.

Factors to be taken into consideration in determining the reasonableness of attorney's fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence of counsel; and (10) the court's own knowledge. <u>See</u> Rule 1.5(a) of the Rules of Professional Conduct; **Anglin v. Anglin**, 2009-0844 (La. App. 1 Cir. 12/16/09), 30 So.3d 746, 752. The trial court has much discretion in fixing an award of attorney's fees, and its award will not be modified on appeal absent a showing of an abuse of discretion. **Anglin**, 30 So.3d at 752.

Robert requested attorney's fees in each of his contempt filings at issue in this case. Although it appears from the appellate record that Robert submitted an affidavit setting forth attorney's fees on or about November 6, 2023, the affidavit itself is not in the record. Nevertheless, Katherine does not challenge any time entries or calculations by Robert's attorneys that led to the award; rather, she re-

asserts that she has demonstrated an inability to pay and is therefore protected by La. R.S. 13:4206. However, as discussed in Assignments of Error I and K, Katherine has not established that she is unable to pay the attorney's fees award. The only evidence regarding Katherine's ability to pay in the appellate record is her own testimony that she works as an architect in New Orleans, where she rents an office for $1,500.00 per month, and her testimony that all she does "is work." No evidence has been produced proving any inability to pay.

Although the attorney's fees award in this case is substantial, we note that this case involves three different contempt filings that took years and numerous hearings to resolve, each of which were successfully prosecuted by Robert, leading to twelve findings of contempt. Therefore, under La. R.S. 13:4611(1)(g), we find that the trial court was authorized to award Robert attorney's fees. See **D'Amico**, 378 So.3d at 189. Further, the trial court in this case is well-aware of the parties, the issues involved in the litigation, and the time spent by Robert's counsel of record on the litigation, in preparation of trial, and at trial. See **Hagen v. Hagen**, 2023-0242 (La. App. 1 Cir. 9/15/23), 376 So.3d 159, 167-68. Considering the foregoing, we cannot say the trial court abused its discretion in ordering Katherine to pay $53,500.00 in attorney's fees to Robert. See **Short v. Short**, 2024-0656 (La. App. 1 Cir. 7/11/25), 418 So.3d 938, 962-63, writ denied, 2025-01016 (La. 11/5/25), 420 So.3d 38 (finding that the trial court did not abuse its discretion in ordering contemnor to pay attorney's fees in the amount of $77,347.70 based upon the unique facts of the case, the trial court's familiarity with the proceedings and the parties, and the trial court's findings concerning the contemnor's pattern of willful contempt and discovery violations over several years).

This assignment of error lacks merit.

## ANSWER TO APPEAL

Robert has answered the appeal, requesting that he be awarded additional attorney's fees incurred in answering and defending this appeal. When a party is awarded attorney's fees by the trial court and is then forced to and successfully defends an appeal, it is appropriate for the appellate court to reasonably increase the amount of the awarded attorney's fees to keep the appellate judgment consistent with the underlying judgment. **Pinnacle Builders, Inc. v. John**, 2021-0335 (La. App. 1 Cir. 12/22/21), 340 So.3d 107, 118; **Lewnau v. Board of Supervisors of Southern State University**, 2019-0943 (La. App. 1 Cir. 1/9/20), 295 So.3d 419, 427, <u>writ denied</u>, 2020-00240 (La. 5/1/20), 295 So.3d 937; **Genusa v. Dominique**, 97-0047 (La. App. 1 Cir. 2/20/98), 708 So.2d 784, 792. The award is made at the appellate court's discretion upon consideration of such factors as the skill exercised by the attorney and the amount of time and work reflected in the appeal. **Pinnacle Builders, Inc.**, 340 So.3d at 118. After thorough consideration, we find a $2,000.00 increase in the amount of attorney's fees is reasonable. Therefore, we amend the trial court's judgment to increase the amount of attorney's fees ordered by that amount.

## DECREE

For the above and foregoing reasons, we grant the answer to the appeal filed by Robert James Ragland. We amend the contempt judgment signed by the Family Court of the Parish of East Baton Rouge on December 6, 2023 to increase the attorney's fees award from $53,500.00 to $55,500.00. As amended, the December 6, 2023 judgment is affirmed. Costs of this appeal are assessed to Appellant, Katherine Diamond Ragland.

**ANSWER TO APPEAL GRANTED; JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.**